1  NICHOLS KASTER & ANDERSON LLP
   Bryan J. Schwartz, CA State Bar No. 209903
2  Schwartz@nka.com
   Matthew C. Helland, CA State Bar No. 250451
3  Helland@nka.com
4  One Embarcadero Center, Suite 720
   San Francisco, CA 94111
5  Telephone: (415) 277-7235
6  Facsimile: (415) 277-7238

7  Attorneys for Individual and Representative Plaintiffs
8
9  Additional Attorneys Listed On Following page

10

11
                IN THE UNITED STATES DISTRICT COURT
12      CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION
13

14 | Jose Cervantez, et al, individually,     | Case No. EDCV07-00729 VAP (OPx)
15 | on behalf of others similarly situated,
   | and on behalf of the general public,      | **MEMORANDUM OF LAW AND**
16 |                                            | **POINTS OF AUTHORITIES IN**
17 |              Plaintiffs,                   | **SUPPORT OF PLAINTIFFS'**
                                               | **MOTION FOR CLASS**
18 | v.                                         | **CERTIFICATION**
19 | Celestica Corporation, et al,
20
21 |              Defendants.                   | Honorable Virginia Phillips
22 |                                            | Riverside Division, Courtroom: 2
                                               | Hearing: June 30, 2008, 10:00 A.M.
23

24

25

26

27

28

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

NICHOLS KASTER & ANDERSON PLLP
James H. Kaster CA State Bar No. 248949
Kaster@nka.com
Paul J. Lukas, MN State Bar No. 22084X
Lukas@nka.com
(*pro hac vice* application forthcoming)
4600 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878

ERVIN, COHEN & JESSUP LLP
Eric W. Cheung, CA State Bar No. 235008
echeung@ecjlaw.com
9401 Wilshire Blvd, 9th Floor
Beverly Hills, CA  90212
Telephone: (310) 281-6392
Facsimile: (310) 887-6874

Attorneys for Individual and Representative Plaintiffs

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

# Table of Contents

I.     **INTRODUCTION** .........................................................................1

II.    **FACTUAL BACKGROUND** ........................................................1

III.   **PLAINTIFFS HAVE ESTABLISHED EACH ELEMENT UNDER RULE 23 FOR CERTIFICATION AND THE COURT SHOULD, THEREFORE, CERTIFY THE PROPOSED CLASSES.** .......................8

  a.  Plaintiffs' Claims are Appropriate for Certification under Fed.R.Civ.P. 23....9

    i.  Plaintiffs Satisfy the Numerosity Requirement...........................................10

    ii.  Questions of Law and Fact Are Common to All Members of the Proposed Class...................................................................................................10

    iii.  The Claims of the Representative Parties are Typical of the Claims of the Class...................................................................................................13

    iv.  Plaintiffs Will Fairly and Adequately Protect the Interests of the Class. ………………………………………………………………………14

    v.  The Proposed Class Meets the Requirements of Rule 23(b)(3). .................15

      1.  Common issues predominate over individual matters. ...........................16

      2.  A class action is superior to other methods of litigation........................17

  b.  This Court Should Appoint The Undersigned Class Counsel. .......................20

  c.  This Court Should Appoint Cervantez, Reyes, Santos, Flores, and Nguyen as Class Representatives.........................................................................20

  d.  The Class Members Are Entitled to Damages for a Four-Year Period from the Date the Suit Was Filed. ................................................................20

IV.   **PROPOSED NOTICE** ..........................................................21

V.    **CONCLUSION**.........................................................................22

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1

# Table of Authorities

2

**Cases**

**Blackie v. Barrack,**
  **524 F.2d 891 (9th Cir.1975)** ...................................................................**10**

**Cortez v. Purolator Air Filtration Products Co.,**
  **23 Cal.4th 163 (2000)**.............................................................................**21**

**Cypress v. Newport News General & Nonsectarian Hospital Ass'n,**
  **375 F.2d 648 (4th Cir.1967)** ..................................................................**10**

**Dukes v. Wal-Mart Stores, Inc. ("Dukes I"),**
  **222 F.R.D. 137 (N.D. Cal. 2004)** ...........................................................**11**

**Dukes v. Wal-Mart, Inc.,**
  **509 F.3d 1168 (9th Cir. 2007)** ..............................................**9, 10, 11, 13, 14, 19**

**Eisen v. Carlisle & Jacquelin,**
  **417 U.S. 156 (1974)**.................................................................................**10**

**Goldsby, et al v. Adecco,**
  **N.D.Cal. Case No. 07-05604 (MMC)** ......................................................**18**

**Gutierrez v. Kovacevich "5" Farms,**
  **2004 WL 3745224, *9 (E.D.Cal. 2004)** ...........................................**16, 18**

**Hanlon v. Chrysler Corp.,**
  **150 F.3d 1011 (9th Cir.1998)** ........................................................**10, 13, 14**

**Hilao v. Estate of Ferdinand Marcos,**
  **103 F.3d 767 (9th Cir.1996)** ...................................................................**19**

**Jordan v. County of Los Angeles,**
  **669 F.2d 1311 & FN10 (9th Cir. 1982)** .........................................**10, 13, 14**

**Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas
Sands, Inc.,**
  **244 F.3d 1152 (9th Cir. 2001)**.......................................................**16, 18**

**Moore v. Hughes Helicopters, Inc., 708 F.2d 475 (9th Cir.1983)** ........................**10**

**Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles,**
  **246 F.R.D. 621 (C.D.Cal. 2007)** ..................................................**13, 16, 17**

**Murphy v. Kenneth Cole Productions, Inc.,**
  **40 Cal.4th 1094, 155 P.3d 284 (2007)**.......................................................**21**

**Olano v. Gonzalez,**
  **248 F.R.D. 248, 2008 WL 589007 (C.D.Cal. 2008)** ..............................**9**

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Phillips Petroleum Co. v. Shutts,**
   **472 U.S. 797 (1985)** ........................................................................**18**

**Valentino v. Carter-Wallace, Inc.,**
   **97 F.3d 1227 (9th Cir.1996)** ......................................................**17**

**Zinser v. Accufix Research Inst., Inc.,**
   **253 F.3d 1180, (9th Cir. 2001)** ..................................................**17**
   **273 F.3d 1266 (9th Cir. 2001)**…………………………………………**17**

**Statutes**

**California Business and Professions Code § 17200, et seq** .................................**21**

**California Labor Code § 226.7** ..................................................................**21**

**California Labor Code § 510** ....................................................................**20**

**California Labor Code § 512** ..............................................................**20, 21**

**California Labor Code § 1198** ..................................................................**20**

**Industrial Welfare Commission ("IWC") Wage Order No. 1**
   **(8 C.C.R. § 11010)** ........................................................................**20, 21**

**Other Authorities**

**3 Newberg on Class Actions, (4th ed. 2002)**……………………………………**10**

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

## I.  INTRODUCTION

Plaintiffs come before the Court seeking certification of their claims for Defendants' failure to pay overtime wages and premiums for missed meal and rest periods.  Plaintiffs and the putative class have been subject to uniform and class-wide denial of their rights.

Plaintiffs and the putative class spend up to an hour a day of unpaid time passing through Defendants' security procedures and clocking in and out for work. Defendants have intentionally programmed their time clocks to erase up to 45 minutes of Plaintiffs' time a day, and Defendants' supervisors manually erase the overtime the time clocks miss.  As a result, Plaintiffs and the putative class are not paid for the time they dedicate to Defendants before and after their scheduled shift.

Defendants also uniformly violate Plaintiffs' meal and rest period rights, admittedly failing to pay premiums for missed meal and rest periods, admittedly failing to provide employees with a second meal period after 10 hours of work as required by California law, and failing to provide employees with suitable resting facilities as required by California law.

Plaintiffs therefore seek certification for the following defined classes:

**Security Line Class:**          All current and former non-exempt employees of Defendants who passed through security screening before, during or after their work shift, in Celestica's facility at 13473 Santa Ana Avenue, Fontana, California, since June 14, 2003.

**Meal and Rest Period Class:**       All current and former non-exempt employees of Defendants who worked at Celestica's facilities at 13473 Santa Ana Avenue, Fontana, California and 1392 North Sarah Place, Ontario, California, and who were entitled to receive meal and/or rest periods, since June 14, 2003.

## II. FACTUAL BACKGROUND

Celestica is a manufacturing and production company with facilities throughout the United States, including in Fontana, California.  Celestica's Answer

1

to Second Amended Compl., Dkt. 49, ¶ 10.  The "Fontana Facility" has buildings in both Fontana, California and Ontario, California.  Id.  The buildings are only 2.7 miles apart.  Helland Decl. ¶ 38.  The Ontario building is also referred to as "SMI." Kozar Depo. at 11.[1]  Celestica services products for companies such as Lexmark, Juniper, and DirecTV.  Kozar Depo. at 18-19.  Celestica receives shipments of various products, completes quality checks, and performs "fulfillment" services, such as replacing owners' manuals, adding or replacing parts, and changing logos on the products.  Kozar Depo. at 91-92; 64.

The Celestica facility in Fontana is very large – approximately 425,000 square feet.  Kozar Depo. at 77.  Celestica and Adecco employ up to 600 people a day in the facility, with up to 400 people working on one shift.  Id. at 34-35.  The vast majority of these employees are temporary workers provided to Celestica by Adecco.[2]

Celestica and Adecco require that employees are at their work station, ready to work, at the start of their shift.  Kozar Depo. at 24; Hutchins Depo. at 43, 85-86;[3] Campbell Depo. at 20;[4] Marez Depo. at 21;[5] Saenz Depo. at 29.[6]  Before the start of

---

[1] Selections from the Deposition of Jacquelyn Kozar are attached to the Helland Decl. as Exhibit I.

[2] Adecco testified that it provided approximately 3,965 non-exempt employees to work at Celestica's Fontana facility during the statutory period.  Exh. G.  Celestica identified 44 full-time employees who worked on the production floor.  Exh. H.  In the four months since these responses were served, the putative class has no doubt grown.  Defendants have not changed their time clock practices; in fact, in late March, Adecco, at the request of Celestica, moved the DirecTV time clocks from the area near the entrance of the facility where the other time clocks are located, into the fenced-in DirecTV area in the center of the facility.  Marez Depo. at 16-19. The result of this move is that employees have longer to walk after they go through security but before they clock in, and after they clock out but before they go through security.

[3] Selections from the Deposition of Dana Hutchins are attached to the Helland Decl. as Exhibit J.

[4] Selections from the Deposition of Mylinda Campbell are attached to the Helland Decl. as Exhibit K.

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

their shift, however, employees are required to undergo security screening. Campbell Depo. at 19; Kozar Depo. at 93-94, 96-97.  The security screening includes a metal detector as well as a wand.  Campbell Depo. at 19.  Celestica requires all production floor employees, both permanent and temporary, to undergo this security screening.  Kozar Depo. at 93-94, 96-97; Campbell Depo. at 9-10, 15-16.[7]  After completing security, employees must clock in before proceeding to their work stations.  Holmes Decl. ¶ 4;[8]  Morales Decl. ¶ 4;[9]  Simpkins Decl. ¶ 4;[10] Orozco Decl. ¶ 4;[11] J. Hernandez Decl. ¶ 4;[12] Espinoza Decl. ¶ 4;[13] Darwin Decl. ¶ 4;[14] Damper Decl. ¶ 4;[15] Ruedas Decl. ¶ 4.[16]

   Plaintiffs and putative class members testify that they arrive for work approximately 15 to 30 minutes before the start of their shift in order to pass through security, clock in, and arrive at their work station on time.  Cervantez Depo. at 130;[17] Santos Depo. at 67-68;[18] Flores Depo. at 86-87, 89-90;[19] Nguyen

---

[5] Selections from the Deposition of Lisa Marez are attached to the Helland Decl. as Exhibit L.

[6] Selections from the Deposition of Monica Saenz are attached to the Helland Decl. as Exhibit M.

[7] At some point in time, Defendants began allowing employees who worked in the Juniper area at the rear of the facility to enter through a back door.  Kozar Depo. at 58-59.

[8] The Declaration of Shari Holmes is attached to the Helland Decl. as Exhibit S.

[9] The Declaration of Grettel Morales is attached to the Helland Decl. as Exhibit T.

[10] The Declaration of Sylvester Simpkins is attached to the Helland Decl. as Exhibit U.

[11] The Declaration of Bertha Orozco is attached to the Helland Decl. as Exhibit V.

[12] The Declaration of Josefina Hernandez is attached to the Helland Decl. as Exhibit X.

[13] The Declaration of Evangelina Espinoza is attached to the Helland Decl. as Exhibit Y.

[14] The Declaration of Valorie Darwin is attached to the Helland Decl. as Exhibit Z.

[15] The Declaration of Aleta Damper is attached to the Helland Decl. as Exhibit AA.

[16] The Declaration of Maria Ruedas is attached to the Helland Decl. as Exhibit BB.

[17] Excerpts from the Deposition of Jose Cervantez are attached to the Helland Decl. as Exhibit N.

[18] Excerpts from the Deposition of George Santos are attached to the Helland Decl.

Depo. at 58-59;[20] Holmes Decl. ¶ 5; Morales Decl. ¶ 5; Simpkins Decl. ¶ 5; Orozco Decl. ¶ 5; J. Hernandez Decl. ¶ 5; Espinoza Decl. ¶ 5; Darwin Decl. ¶ 5;  Damper Decl. ¶ 5; Ruedas Decl. ¶ 5.   Employees who are late to their work station are disciplined.   Marez Depo. at 21.  At the end of the shift, all of the employees on the shift must stand in line to clock out and then stand in line to go through security again.[21]  Plaintiffs and putative class members testify that this takes between 10 and 40 minutes.[22]

Employees are not paid for the time they spend in the security line and waiting to clock in and out.  Adecco's time clocks are programmed with a "one-way ratchet" to erase employees' time when they arrive early and leave late, but record each minute that employees arrive late or leave early.   As Adecco's corporate designee described it:

> The scheduled shift rounding which is in place for Fontana allows the associates 30 minutes to clock in and 15 minutes to clock out.
>
> So, for an example, if an associate is scheduled to punch in at 8:00 a.m., our system will show a scheduled start of 8:00 with a 30-minute window between 7:30 and 8:00.  If the associate punches in any time between 7:30 and 8:00, the clock will record the time of

---

as Exhibit O.

[19] Excerpts from the Deposition of Marina Flores are attached to the Helland Decl. as Exhibit P.

[20] Excerpts from the Deposition of Maria Nguyen are attached to the Helland Decl. as Exhibit Q.

[21] Cervantez Depo. at 275-280; Santos Depo. at 159-62, Flores Depo. at 168-69, Nguyen Depo. at 111-14, 117-18; Holmes Decl. ¶ 6; Morales Decl. ¶ 6; Simpkins Decl. ¶ 6; Orozco Decl. ¶ 6;  J. Hernandez Decl. ¶ 6; Espinoza Decl. ¶ 6; Darwin Decl. ¶ 6; Damper Decl. ¶ 6;  Ruedas Decl. ¶ 6.

[22] Cervantez Depo. at 275, 278; Santos Depo. at 159, 164-66, 169-70; Flores Depo. at 168-69, 174; Nguyen Depo. at 111-14, 117-18; Holmes Decl. ¶ 6; Morales Decl. ¶ 6; Simpkins Decl. ¶ 6; Orozco Decl. ¶ 6;  J. Hernandez Decl. ¶ 6; Espinoza Decl. ¶ 6; Darwin Decl. ¶ 6; Damper Decl. ¶ 6;  Ruedas Decl. ¶ 6.

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

8:00. If the associates were to punch after 8:00 o'clock, it would record the actual time.

When the associate punches out on the scheduled-rule setup, using the example of a 4:00 p.m. end time, our clock would be set up with a scheduled end of 4:00 o'clock (sic); and it would allow until 4:15 that associate to punch out. If they punched out any time between 4:00 and 4:15 p.m., the actual end time recorded by the clock would be 4:00 p.m. Any punches outside of that time period would be recorded as actual time.

Hutchins Depo. at 51-52. Using this time clock, Defendants take up to 45 minutes of their employees' time each day uncompensated, but still dock employees' pay for each minute they are late. To add insult to injury, the time clocks make no record of actual punch time when employees access the clock a half hour before the shift start or 15 minutes after the shift end; the records simply read, e.g., 8:00 A.M. and 4:00 P.M. (as opposed to, e.g., 7:42 A.M. and 4:12 P.M.).[23] Id. at 52, 56; Campbell Depo. at 24-26. Therefore, Defendants have intentionally deleted direct evidence showing that employees regularly arrived to work early and left work late.

Adecco's corporate representative testified that she presented Celestica with the time clock setting options when the time clocks were first introduced, and that Celestica selected the above-described settings. Campbell Depo. at 24-26. The document Adecco presented to Celestica includes three possible settings for punching in and out: "scheduling," which provides windows on the front and back end of the shift for employees to clock in but pays according to shift time; "rounding," which pays employees to the nearest quarter hour from when they punch; and "actual," which pays employees for the time they are actually clocked in. See Exh. A, at Adecco 01581. Defendants chose the "scheduling" setting,

---

[23] The typical first shift in the Fontana facility was actually 6:00 A.M. to 2:30 P.M. or 5:30 A.M. to 2:00 P.M. Kozar Depo. at 24, 36.

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1    which, according to the document, "provides [Defendants] with the ability to

2    enforce schedules."[24]    Id.    Incidentally, the document cautions that the "actual"

3    setting "tends to create unauthorized overtime."[25]    Id.    Within the "scheduling"

4    setting, defendants chose the largest allowable windows of 30 minutes pre-shift and

5    15 minutes post-shift.    Id.

6        Evidently, however, the 45 minutes of free time each day is not enough for

7    Defendants; Defendants manually deduct employees' time if they happen to access

8    the clock outside of the 30 minute and 15 minute windows.    Monica Saenz, the

9    Adecco on-site supervisor whose job duties included daily review of employees'

10   time records for approximately two years of class period, testified that she regularly

11   altered over 25% of the time records.    Saenz Depo. at 8, 12-13, 19.    She deleted

12   minutes from employees' time when they had not been approved for overtime.    Id.

13   at 57.    She was instructed "not to take like more than a half hour," Id. at 18, but if

14   someone worked 8.2 hours in a day and did not have overtime approval, she would

15   "probably have taken it out."    Id. at 57.    Thus, if an employee was standing in the

16   time clock line for more than 15 minutes at the end of the shift, and therefore

17   punched outside of the fifteen minute "window," Adecco managers would simply

18   delete that time and the employee still would not be paid for it.    The limited time

19   records Defendants have produced to date reflect this time deletion.    See Helland

20   Decl. ¶ 4; Exh. B.[26]

21        In addition to stealing Plaintiffs' time, Defendants have failed to comply with

22   California meal and rest period law on a class-wide basis.    Adecco's corporate

23   representative testified that they have never paid a single premium for missed meal

24   and rest periods to any employee in the "Inland Empire" region of California, which

---

25   [24] Read another way, the "scheduling" setting prevents Defendants from paying for
26   work time that occurs outside the scheduled shift.

27   [25] Read another way, the "actual" setting pays employees for all time that they are
     clocked-in and at Defendants' disposal.

28   [26] The deleted time appears in the records with a "1 WORKED" adjust code and
     reads as negative time.

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

includes Fontana and Ontario.  Campbell Depo. at 45-46, 59.  Paper time cards show that Defendants did not provide Plaintiffs with a second meal period when they worked 10 hours or more.  See Exhs. C, D.[27]  Testimony from Plaintiffs and putative class members confirms that Defendants failed to provide a second thirty-minute meal period after 10 hours of work. Reyes Depo. at 144-45;[28] Santos Depo. at 150; Flores Depo. at 151; Nguyen Depo. at 106; Holmes Decl. ¶ 8;  Morales Decl. ¶ 8; Simpkins Decl. ¶ 8; Orozco Decl. ¶ 8; Espinoza Decl. ¶ 8;  Ruedas Decl. ¶ 8.  Adecco on-site supervisor Monica Saenz testified that the company policy was to provide only a third 10 minute rest period after 10 hours.  Saenz Depo. at 34-35.  She does not ever remember a second 30 minute meal period.  Id.  Celestica's director of human resources could not recite the law regarding meal periods during her deposition.   Kozar Depo. at 60, 62.   Defendants have only produced one document reflecting their alleged policy to provide a second meal period after 10 hours work.  See Exh. E.  This document was not created until late 2007, months after the instant lawsuit had been initiated.  Campbell Depo. at 16.

Adecco's time clocks are programmed to automatically deduct a half hour lunch period each shift.  Marez Depo. at 47-50.  They are not programmed to deduct a second meal period after 10 hours.  Id.  Defendants' pay records reflect numerous instances in which employees worked 10 or more hours in a day with only one meal period.  See Exh. F.  Defense witness Lisa Marez, a current Adecco supervisor-level employee who began working for Adecco after this lawsuit began, testified that that she checks with employees' supervisors each time an employee works 10 hours to ensure that the employee takes a second meal period.  Marez Depo. at 6-7, 47-49.  After confirming that the break was taken, she deducts a second break from that employees' time.  Id.  The records Adecco has produced to date do not support Marez's testimony.  Records from as late as December 2007,

---

[27] Indeed, these time cards do not even have space to record a second meal period.

[28] Selections from the Deposition of Rusty Reyes are attached to the Helland Decl. as Exhibit R.

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1  six months after this litigation began, reflect missed second meal periods when
2  employees worked 10 hours or more.[29]

3       Plaintiffs and putative class members also testify that Defendants' resting
4  facilities were not suitable.  Employees were required to stand while they worked,
5  and the facility was very hot and loud.[30]  It took time and effort to walk to the break
6  room, and because of the distance, employees often had little or no time left for
7  their break before they had to walk back to their work stations.[31]  As a result,
8  employees often took their rest periods at their work stations by sitting on the
9  ground, on their forklifts, or on a pile of pallets.[32]  In addition to these systemic
10 denials of meal and rest periods, Plaintiffs' testimony reflects other denials of rest
11 periods.[33]

12 **III.    PLAINTIFFS HAVE ESTABLISHED EACH ELEMENT**
13 **UNDER RULE 23 FOR CERTIFICATION AND THE COURT**
14 **SHOULD, THEREFORE, CERTIFY THE PROPOSED CLASSES.**

15      Plaintiffs have readily met each requirement for class certification.

---

[29] See Ehx. F, at C-NKA012004, 012129, 012187, 012211.  On December 21, the
Friday before Christmas, one employee worked 17.8 hours with only one meal
period.  See Id. at C-NKA012211.

[30] Marez Depo. at 32-34; Saenz Depo. at 46; Nguyen Depo. at 155; Holmes Decl.
¶¶ 7, 9; Morales Decl. ¶ 9; Simpkins Decl. ¶¶ 7, 9; Orozco Decl. ¶¶ 7, 9; D. Reyes
Decl. ¶ 4;[30] J. Hernandez Decl. ¶ 7, 8; Espinoza Decl. ¶¶ 7, 9; Darwin Decl. ¶ 8;
Damper Decl. ¶¶ 7-8;  Ruedas Decl. ¶¶ 7, 9.

[31] Nguyen Depo. at 75, 104; Flores Depo. at 129; Holmes Decl. ¶ 7; Morales Decl.
¶ 7; Orozco Decl. ¶ 7; D. Reyes Decl. ¶ 3; J. Hernandez Decl. ¶ 7; Espinoza Decl. ¶
7; Darwin Decl. ¶ 7; Damper Decl. ¶ 7; Ruedas Decl. ¶ 7.

[32] Saenz Depo. at 45-46; Cervantez Depo. at 158, 160-61, 197; Reyes Depo. at 135-
36; 154-56; Flores Depo. at 129-30; Nguyen Depo. at 101-02; Holmes Decl. ¶ 9;
Morales Decl. ¶ 9; Orozco Decl. ¶ 9;  D. Reyes Decl. ¶ 4; J. Hernandez Decl. ¶ 8;
Espinoza Decl. ¶ 9; Darwin Decl. ¶ 8;  Damper Decl. ¶ 8;  Ruedas Decl. ¶ 9.

[33] In some instances, supervisors would cut employees' breaks short or skip them
altogether.  See, e.g., Reyes Depo. at 122-23; 137-38; Cervantez Depo. at 183-84,
191, 193, 199; Santos Depo. at 93; 104-05, 109-113, 140-43; 211-12.  Other times,
employees who worked the line were held back or switched from line to line such
that they never received breaks.  Flores Depo. at 131; 137-140.

Defendants admit that they have not paid Plaintiffs and the putative class for time spent waiting in Defendants' security lines and time clock lines. They have further admitted that the putative Security Class is required to pass through security. Therefore, with respect to the Security Class, the only questions at issue are 1) whether the time in question is compensable, and 2) the amount of class members' damages. The Security Class should therefore be certified because the liability question can be answered on behalf of the entire class and any differences in Plaintiffs' damages do not preclude certification.

Further, Defendant Adecco admits that it has not paid a single meal or rest period premium to any member of the putative class. Defense witnesses have admitted to outright violations of state law regarding meal and rest periods on a class-wide basis. Thus, because the only remaining question as to the Meal and Rest Class is the extent of damages, the Meal and Rest Class should be certified.

### a. Plaintiffs' Claims are Appropriate for Certification under Fed.R.Civ.P. 23.

Courts certify Rule 23 classes where: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a); Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1176 (9th Cir. 2007). See also Perez-Olano v. Gonzalez, 248 F.R.D. 248, 2008 WL 589007, *3 (C.D.Cal. 2008). In addition to the Rule 23(a) factors, certification requires a showing that one of the requirements of Rule 23(b) have been met – here, that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3). See Dukes, 509 F.3d at 1176; Perez-Olano, 2008 WL 589007, *4.

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

In adjudicating a motion for class certification, the court accepts the allegations in the complaint as true so long as those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied. See Blackie v. Barrack, 524 F.2d 891, 901 FN17 (9th Cir.1975). The merits of the class members' substantive claims are generally irrelevant to this inquiry. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974); Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir.1983). See also 3 Newberg on Class Actions, (4th ed. 2002) § 7:9.

### i.   Plaintiffs Satisfy the Numerosity Requirement.

Here, the putative class has at least 4,000 members.  See Exhs. G, H.   No specific number is needed to maintain a class action. Cypress v. Newport News General & Nonsectarian Hospital Ass'n, 375 F.2d 648, 653 (4th Cir. 1967). Classes consisting of forty or more persons "should have a reasonable chance of success on the basis of number alone." 3 Newberg, supra § 3:5. A class of 4,000 current and former employees easily meets the numerosity requirement. See, e.g., Jordan v. County of Los Angeles, 669 F.2d 1311, 1319 & fn10 (9th Cir. 1982) (stating inclination "to find the numerosity requirement . . . satisfied solely on the basis of the number of ascertained class members, i.e., 39, 64, and 71," and listing thirteen cases in which courts certified classes with fewer than 100 members), vacated on other grounds, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982).

### ii.   Questions of Law and Fact Are Common to All Members of the Proposed Class.

In the Ninth Circuit, "Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Dukes, 509 F.3d at 1177, citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir.1998). "The commonality test is qualitative rather than quantitative – one

-10-

1   significant issue common to the class may be sufficient to warrant certification."
2   Dukes, 509 F.3d at 1177.  "Plaintiffs may demonstrate commonality by showing
3   that class members have shared legal issues by divergent facts or that they share a
4   common core of facts but base their claims for relief on different legal theories."
5   Id., citing Dukes v. Wal-Mart Stores, Inc., 222 F.R.D. 137, 141-42 (N.D. Cal. 2004)
6   (Dukes I).

7     In Dukes, the Ninth Circuit found commonality in a massive nationwide class
8   of women across job positions with widely varied circumstances – a class, as the
9   Court explained, which was "broad and diverse. It encompasses approximately 1.5
10  million employees, both salaried and hourly, with a range of positions, who are or
11  were employed at one or more of Wal-Mart's 3,400 stores across the country."
12  Dukes, 509 F.3d at 1176-77. The Court concluded that, despite the extraordinary
13  spectrum of factual scenarios giving rise to the Dukes suit, that for Rule 23
14  certification purposes, the Court could infer that the plaintiffs were "subjected to a
15  *single set of corporate policies* (not merely a number of independent discriminatory
16  acts)." (Emph. in original.) Id. at 1183.

17    Here, the common issues are much more uniform than were the issues in
18  Dukes.  As an initial matter, the class is narrow in scope – it only involves one
19  "facility," which is made up of two buildings less than three miles apart.
20  Defendants' common policies were in place throughout the entire Fontana facility.

21    For the Security Line Class, the common legal question is whether
22  employees are entitled to pay for the time they spend waiting in line for security,
23  passing through security, and waiting in line to clock in or out.  This question
24  presents "one significant issue common to the class [that is] sufficient to warrant
25  certification."  Dukes, 509 F.3d at 1177.  Defendants' egregious time clock rules
26  and blatant stealing of their employee's time impact the entire putative class.

27    There are also common legal issues for the Meal and Rest Period Class.  First
28  and foremost, Defendant Adecco's corporate representative testified that the

-11-

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

company has <u>never</u> paid a meal or rest period premium to any of their employees. Campbell Depo. at 45-46, 59. This is a "common corporate policy" that is appropriate for class treatment. Further, there is evidence in the record that Defendants' policies and practices led to the uniform denial of meal and rest periods throughout the entire class in certain instances.[34] For example, Defense witness Monica Saenz testified that, at least for portions of the class period, employees only received a third 10 minute break, as opposed to a second 30 minute meal period, when they worked 10 hours or more. Saenz Depo. at 34-35. Plaintiffs and putative class members testify that they did not receive a second meal period after 10 hours.[35] Defendants' pay records support this testimony.[36] This is a class-wide violation of law that is ripe for summary judgment in favor of Plaintiffs. <u>See</u> IWC Wage Order No. 1, ¶ 11 (requiring a second thirty-minute meal period after ten hours of work). If it is appropriate for class wide adjudication on summary judgment, it is certainly a common enough issue to warrant class certification.

Additionally, Plaintiffs contend that they were denied rest periods because they were required to choose between spending their rest period walking to and from the break room or simply taking their rest period sitting on pallets or at their work stations.[37] IWC Wage Order No. 1 requires employers to provide "[s]uitable resting facilities . . . in an area separate from the toilet rooms . . . available to

---

[34] This is not to say that these meal and rest period claims are the only claims that are appropriate for class certification. The uniform failure to pay meal and rest period premiums presents a sufficient legal issue for certification of all meal and rest period claims.

[35] Reyes Depo. at 144-45; Santos Depo. at 150; Flores Depo. at 151; Nguyen Depo. at 106; Holmes Decl. ¶ 8; Morales Decl. ¶ 8; Simpkins Decl. ¶ 8; Orozco Decl. ¶ 8; Espinoza Decl. ¶ 8; Ruedas Decl. ¶ 8.

[36] <u>See</u> Exhs. C, D, F.

[37] <u>See</u>, e.g., Saenz Depo. at 45-46; Cervantez Depo. at 158, 160-61, 197; Reyes Depo. at 135-36; 154-56; Flores Depo. at 129-30; Nguyen Depo. at 101-02; Holmes Decl. ¶¶ 7, 9; Morales Decl. ¶ 9; Simpkins Decl. ¶¶ 7, 9; Orozco Decl. ¶¶ 7, 9; D. Reyes Decl. ¶ 4; J. Hernandez Decl. ¶ 7, 8; Espinoza Decl. ¶¶ 7, 9; Darwin Decl. ¶ 8; Damper Decl. ¶¶ 7-8; Ruedas Decl. ¶¶ 7, 9.

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

employees during work hours."  This Court can easily determine, on a class-wide basis, whether Defendants provided employees with suitable resting facilities under the eyes of the law.

These common questions of law are "significant issue[s] common to the class," which are sufficient to support certification.  <u>Dukes</u>, 509 F.3d at 1177.  Therefore, Plaintiffs have met the commonality requirement of Rule 23.

### iii.  The Claims of the Representative Parties are Typical of the Claims of the Class.

"Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical. Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality." (Internal citations omitted.) <u>Dukes</u>, 509 F.3d at 1184.  Named Plaintiffs' claims are typical if they are "reasonably coextensive with those of absent class members." <u>Hanlon</u>, 150 F.3d at 1020; <u>Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles</u>,  246 F.R.D. 621, 631 (C.D.Cal. 2007).  The typicality requirement "is designed to assure that the named representative's interests are aligned with those of the class." <u>Jordan</u>, 669 F.2d at 1321. Where such an alignment exists, a representative who vigorously pursues her own interests will necessarily advance the interests of the class. <u>Id.</u>

In <u>Dukes</u>, the Court found typicality under Rule 23(a)(3) based on a common practice defined as "a corporate culture of uniformity and gender stereotyping." <u>Id.</u> The Court's finding came in spite of the fact that "individual employees in different stores with different managers may have received different levels of pay or may have been denied promotion or promoted at different rates." <u>Id.</u>  Here, the common practices that give rise to Plaintiffs' typical claims are much more apparent than those in <u>Dukes</u>.  First, Plaintiffs and putative class members were all subject to the same security line.  When Plaintiffs' vigorously pursue their claims for unpaid time

1    spent in security, they will "necessarily advance the interests of the class."  <u>See</u>

2    <u>Jordan</u>, 669 F.3d at 1321.

3        Second, with respect to the Meal and Rest Period Class, Plaintiffs' claims are

4    typical because they, along with the putative class, have claims for Defendants'

5    uniform failure to pay meal and rest premiums.  Additionally, Plaintiffs and the

6    putative class all have claims for Defendants' uniform and systemic failure to

7    provide a second meal period after 10 hours of work.  Further, Plaintiffs and the

8    putative class all have claims for missed rest periods due to Defendants' unsuitable

9    resting facilities.    These claims are all "typical" because they arise from

10   Defendants' uniform and class-wide policies and procedures.

11       Plaintiffs' meal and rest period claims do not need to be "substantially

12   identical.  Some degree of individuality is to be expected in all cases." <u>Dukes</u>, 509

13   F.3d at 1184.  Therefore, the fact that Plaintiffs may have been denied meal and/or

14   rest periods for different reasons, or by different supervisors, does not defeat class

15   certification.  Plaintiffs worked side-by-side with each other and with the putative

16   class in limited work locations; there are only two facilities, 2.7 miles apart,

17   included in the class.  Plaintiffs and putative class members who have submitted

18   declarations all recount violations of meal and rest period laws.  Defendants

19   <u>uniformly failed to pay</u> Plaintiffs and the putative class for their missed meal and

20   rest periods.  Plaintiffs' claims are therefore typical of those of the class.

21           **iv.  Plaintiffs Will Fairly and Adequately Protect the Interests of**

22              **the Class**.

23       The adequacy factor requires: (1) that the proposed representative Plaintiffs

24   do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are

25   represented by qualified and competent counsel. <u>Hanlon</u>, 150 F.3d at 1020;

26   Fed.R.Civ.P 23(a)(4).  Plaintiffs have diligently participated in this litigation to date

27   – all Plaintiffs have responded to document requests and appeared for deposition.

28   Helland Decl. ¶ 10.  Plaintiffs do not have any conflicts with other employees that

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

would prevent them from representing the class in this action.  <u>See</u>, e.g., Reyes Depo. at 192:7-9.  Plaintiffs are pursuing damages for the same violations of law that each of the putative class members experienced, so there is no inherent conflict of interest amongst the damages sought.

Moreover, Plaintiffs' counsel is a qualified firm with extensive experience in class action and wage and hour litigation.  Nichols Kaster & Anderson ("NKA") started as Don Nichols' private firm in 1974.  Helland Decl. ¶ 12.  It is presently a 20 lawyer firm that has been representing employees almost exclusively for 15 years.  <u>Id.</u>  A large portion of NKA's practice is concentrated on representing employees in class and collective actions.  <u>Id.</u>  NKA has represented over 25,000 employees in such cases and currently is counsel of record on over fifty class or collective cases across the country.  <u>Id.</u>  The vast majority of these cases are wage and hour cases. <u>Id.</u>

James H. Kaster is a well-respected and experienced employment lawyer and trial lawyer.  Helland Decl. ¶ 13.  He is licensed in Minnesota, Wisconsin, and California, and has been practicing law for over twenty-five years.  Paul J. Lukas is a partner with NKA and is an experienced trial lawyer.  <u>Id.</u>, ¶ 14.  Since the year 2000, Mr. Lukas's practice has concentrated on litigating class and collective actions, mostly in the wage and hour area.  <u>Id.</u>  Matthew C. Helland is an associate with NKA who is licensed in Minnesota and California.  <u>Id.</u>, ¶ 15.  He has been with NKA for almost three years.  Bryan J. Schwartz is an associate with NKA who is licensed in California and the District of Columbia.  Both Mr. Helland and Mr. Schwartz are well-versed in representing employees.  <u>Id.</u>

### v.  The Proposed Class Meets the Requirements of Rule 23(b)(3).

In addition to meeting the prerequisites for class certification under Rule 23(a), a class must meet only one of the three alternative requirements for treatment as a class action under Fed. R. Civ. P. 23(b). Here, the class meets the requirements

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1   of Rule 23(b)(3) because issues of fact and law common to Class Members
2   predominate over individual matters, and because a class action is superior method
3   for addressing the claims at issue.

4              **1.**  **Common issues predominate over individual matters.**

5           Rule 23(b)(3) focuses on the relationship between the common and
6   individual issues. "When common questions present a significant aspect of the case
7   and they can be resolved for all members of the class in a single adjudication, there
8   is clear justification for handling the dispute on a representative rather than on an
9   individual basis." Gutierrez v. Kovacevich "5" Farms, 2004 WL 3745224, *9
10  (E.D.Cal. 2004), citing Local Joint Executive Bd. of Culinary/Bartender Trust
11  Fund., 244 F.3d at 1162.

12          Here, common issues predominate.   The legal question of whether
13  Defendants must pay their employees for time spent undergoing security screening
14  and waiting to clock in or out is common to the entire Security Line Class.
15  Damages may vary amongst the class, either because of where employees stood in
16  line or because of difficulties individual employees encountered with security or the
17  time clock.   However, individualized damages do not defeat class certification
18  when there are other central issues that are common to the class.   "When one or
19  more of the central issues in the action are common to the class, the action may be
20  considered proper under Rule 23(b)(3) even though other important matters will
21  have to be tried separately, such as damages or some affirmative defenses peculiar
22  to some individual class members."   Multi-Ethnic Immigrant Workers Organizing
23  Network v. City of Los Angeles, 246 F.R.D. 621, 634 (C.D.Cal. 2007) (citing Local
24  Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,
25  244 F.3d 1152, 1163 (9th Cir. 2001)).   The overriding question common to the
26  Security Line Class is whether Plaintiffs are entitled to pay.   A "single
27  adjudication" will resolve this issue on behalf of the entire Security Line Class.

28          Likewise, there are common issues that predominate over individual ones in

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

the Meal and Rest Period Class.    First, Defendants have admitted that they uniformly failed to pay employees premiums when they missed meal and rest periods.  Second, the evidence suggests that Defendants uniformly failed to provide a second meal period after 10 hours of work.    Third, Plaintiffs assert that Defendants failed to provide suitable resting facilities.  These issues are "central" to this litigation and "common to the entire class;" therefore, they are appropriate for class treatment.  Indeed, after these issues are resolved, the only individual issues left for litigation in the Meal and Rest Period Class will be the number of breaks denied to each individual.  This is a damage question that does not defeat class certification.  See Multi-Ethnic Immigrant Workers, 246 F.R.D. at 634.

## 2.  A class action is superior to other methods of litigation.

"Where class-wide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir.1996). In considering whether a class action is superior, the court must focus on whether the interests of "efficiency and economy" would be advanced by class treatment. Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir. 2001), amended by 273 F.3d 1266 (9th Cir. 2001). Relevant factors include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.  Fed.R.Civ.P. 23(b)(3).  Certification of the case at bar is appropriate under each of these four factors.

First, as to Rule 23(b)(3)(A), no individual class member has an interest in controlling the prosecution or defense of separate actions.  Plaintiffs and putative

class members are low wage workers who likely would not be able to secure individual representation for their claims. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985) (recognizing that class actions permit the plaintiffs to assert claims which would be uneconomical to litigate individually); Local Joint Executive Board of Culinary/Bartender Trust Fund, 244 F.3d at 1152 (same); Gutierrez, 2004 WL 3745224, at *9 (finding superiority, stating, "This case presents a classic example of a claim that is appropriately certified for class treatment. The claims of the individuals are relatively small and an individual claimant would not likely have the resources, motivation, or practical ability to pursue the action on his or her own.").  Further, because class members all stood in the same security line before and after work and suffered from Defendants' uniform meal and rest period policies, their claims are uniform; no one class members' claim is worth substantially more than another's such that she or he has an interest in litigating it individually.

Second, as to subpart (B), to the best of Counsel's knowledge there are no members of the putative class pursuing claims in other venues.  Some Plaintiffs and putative class members filed consent forms to join an FLSA action against Defendants in the District of Minnesota (on which Plaintiffs' counsel is counsel of record); however, the parties have agreed to remove the Fontana opt-ins from that litigation.  Helland Decl. ¶ 16.  Defendant Adecco has informed this Court of another class action in the Northern District of California called Goldsby, et al v. Adecco, N.D.Cal. Case No. 07-05604 (MMC).  See Dkt. 40.  Plaintiffs in the Goldsby case seek to represent a state-wide class of Adecco employees who have been denied meal periods by Adecco.  Id.  However, plaintiffs' counsel in the Goldsby case has agreed to carve the instant class out of their proposed class. Helland Decl. ¶ 17.  Therefore, the Goldsby litigation does not present this Court with a conflicting class.

As to subpart (C), this Court is the proper forum for each class members'

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

claims.  The two facilities at issue are located in San Bernardino County, which is within this District and this Division.  It is therefore desirable to adjudicate the claims in this forum.

Fourth and finally, as to subpart (D), any difficulties in proceeding with this litigation as a class action are outweighed by the substantial efficiencies to be gained by proceeding as a class.  The lion share of this litigation can be resolved by answering several common questions supra, including 1) whether class members must be paid for the time spent in security and the clock line before and after their scheduled shift, 2) whether Defendants' time clock illegally deprives Plaintiffs of pay for hours worked, 3) whether Defendants uniformly failed to pay meal and rest period premiums, 4) whether Defendants uniformly failed to provide a second meal period after 10 hours of work, and 5) whether Defendants provided suitable resting facilities.

Certainly, this case is much more manageable than other cases which have been certified in the Ninth Circuit.  See, e.g., Hilao v. Estate of Ferdinand Marcos, 103 F.3d 767, 782-87 (9th Cir.1996) (approving certification of a case with over 10,000 claimants); Dukes, 509 F.3d at 1190-93 (finding the largest class in history manageable according to the trial court's proposed trial plan).  In the instant case, any individualized damage questions can be addressed in any number of ways, including through representative testimony and/or the assistance of a special master.  See, e.g., Hilao, 103 F.3d at 782-87 (outlining a damages adjudication procedure for class more than twice the size of the instant putative class); Dukes, 509 F.3d at 1190-93 (finding the largest class in history manageable according to the trial court's proposed trial plan).  While Plaintiffs decline to present a detailed trial plan at this juncture (unless one is requested), the Dukes/Hilao example demonstrates that case management should not be a barrier to a finding that class action litigation is a superior mechanism under Rule 23(b)(3)(D) in the instant, smaller and simpler case.

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

### b. This Court Should Appoint The Undersigned Class Counsel.

Plaintiffs' counsel is qualified and has been actively and diligently prosecuting this action. <u>See</u> Dkts. 22, 29 (pursuing progressive argument for punitive damages in a wage and hour action); Helland Decl. ¶ 11.  Further, the Plaintiffs are being represented by attorneys who are highly experienced in class action litigation, with a special emphasis on prosecuting wage and hour claims. Helland Decl. ¶¶ 12-15.

### c. This Court Should Appoint Cervantez, Reyes, Santos, Flores, and Nguyen as Class Representatives.

Plaintiffs' counsel request that Jose Cervantez, Rusty Reyes, George Santos, Marina Flores, and Maria Nguyen be appointed Class Representatives. The Plaintiffs have been diligent in pursuing the Class claim, have worked with counsel in prosecuting the action, and they have and will fairly and adequately represent the interests of the Class.  Helland Decl. ¶ 10.

### d. The Class Members Are Entitled to Damages for a Four-Year Period from the Date the Suit Was Filed.

Industrial Welfare Commission ("IWC") Wage Order No. 1 (8 C.C.R. § 11010) and California Labor Code §510 require an employer, such as Defendants, to pay overtime premium(s) for hours worked in excess of 8 in a given workday, 40 in a given workweek, or on the seventh day worked in a single workweek. Pursuant to California Labor Code § 1198, it is unlawful to employ persons for hours longer than the hours set by the Industrial Welfare Commission ("IWC"), or under conditions prohibited by the applicable wage orders of the IWC.

California Labor Code section 512 and Section 11 of IWC Wage Order No. 1 prohibit an employer from employing a non-exempt employee for a work period of more than five hours per day without providing the employee with an uninterrupted meal period of not less than 30 minutes, or for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than

-20-

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

30 minutes.  California Labor Code section 512 and Section 12 of IWC Wage Order No. 1 require employers to provide a paid ten minute rest period for every four hours worked, or major fraction thereof.  Section 13 of Wage Order No. 1 further provides that "[s]uitable resting facilities shall be provided in an area separate from the toilet rooms and shall be available to employees during work hours."  California Labor Code section 226.7 prohibits any employer from requiring any employee to work during any meal or rest period mandated by an applicable IWC wage order, and provides that an employer that fails to provide an employee with a required rest break or meal period shall pay that employee one additional hour of pay at the employee's regular rate of compensation for each work day that the employer does not provide a compliant meal or rest period.

California Business and Professions Code section 17200, et seq., establishes an unfair competition claim under California law, with a four-year statute of limitations, for any unlawful business act or practice which would advantage an employer over competitors by violating State wage-paying requirements, including a failure to pay employees for all hours worked and to meal and rest period premiums.  See Cortez v. Purolator Air Filtration Products Co., 23 Cal.4th 163, 178-79 (2000) (finding that an unfair competition claim lies for a failure to pay wages); Murphy v. Kenneth Cole Productions, Inc., 40 Cal.4th 1094, 1099, 155 P.3d 284 (2007) (finding that the four year statute of limitations applies to meal/rest period claims).  Therefore, a four-year statute of limitations is proper in the instant case.

## IV.   PROPOSED NOTICE

Plaintiffs propose that the parties provide the Court with a joint proposed notice within fourteen days of the Court's order on the instant motion.  In the event the parties are unable to agree on a proposed notice, Plaintiffs suggest the parties each present the Court with a proposed notice and a brief, not to exceed five pages, within 21 days of the Court's order on the instant motion.

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1    Plaintiffs will distribute the notice.  Plaintiffs therefore request that this Court

2    order Defendants to produce a list, in Excel format, of all persons who meet the

3    class definitions, including for each his/her name, address, telephone number, dates

4    of employment with Defendants, employee number, and last four digits of his/her

5    social security number.

6    **V.    CONCLUSION**

7    For the reasons stated herein, Plaintiffs' request that the Court certify the

8    proposed classes.

9

10   Dated: May 1, 2008                    NICHOLS KASTER & ANDERSON, LLP

11
                                          By:  _____s/Matthew C. Helland_____
12                                             Matthew C. Helland
13                                             ATTORNEYS FOR PLAINTIFFS
                                               AND THE PUTATIVE CLASS
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-22-