1

2

3

O

4

5

6

7

8

9

10                          UNITED STATES DISTRICT COURT

11                          CENTRAL DISTRICT OF CALIFORNIA

12

13   JOSE CERVANTEZ,              )    Case No. EDCV 07-729-VAP
     individually, on behalf      )    (OPx)
14   of others similarly          )
     situated, and on behalf      )    **[Motion filed on May 1,**
15   of the general public,       )    **2008]**
                                  )
16                 Plaintiff,     )    **ORDER GRANTING MOTION FOR**
                                  )    **CLASS CERTIFICATION**
17        v.                      )
                                  )
18   CELESTICA CORPORATION,       )
     ADECCO USA, INC., and        )
19   DOES 1-10 inclusive,         )
                                  )
20                 Defendants.    )
     _____  )

21

22        Plaintiffs' Motion for Class Certification came

23

24   before the Court for hearing on June 30, 2008.  After

25   reviewing and considering all papers filed in support of,

26   and in opposition to, the Motion, as well as the

27   arguments advanced by counsel at the hearing, the Court

28   GRANTS Plaintiffs' Motion for Class Certification.

1
2

# I.   BACKGROUND

**A.   Procedural History**

3
4

Plaintiff Jose Cervantez filed a Complaint on June

5
6

15, 2007 on behalf of himself and others similarly

7

situated, naming as Defendants Celestica Corporation and

8

Adecco USA, Inc.  On October 5, 2007, the Court granted

9

Defendants' Motion to Strike the prayers for punitive

10

damages in the Complaint.

11
12
13

On March 5, 2007, Plaintiffs Jose Cervantez, Rusty

14

Reyes, George Santos, Maria Nguyen, and Marina Flores

15
16

(collectively, "Plaintiffs") filed a Second Amended

17

Complaint ("SAC") on behalf of themselves and others

18

similarly situated, asserting five claims: (1) failure to

19

pay overtime compensation in violation of California law;

20
21

(2) waiting time penalties; (3) failure to provide

22

accurate itemized wage statements; (4) failure to provide

23

rest breaks and meal periods; and (5) unfair business

24

practices.

25
26
27

Plaintiff filed this Motion to Certify Class ("Mot.")

28

on May 1, 2008, with supporting declarations and

exhibits.  On June 2, 2008, Defendant Adecco filed an Opposition ("Adecco Opp'n"), Objections ("Adecco Objections"), and supporting declarations and exhibits. Defendant Celestica filed an Opposition ("Celestica Opp'n") and supporting declarations and exhibits on June 2 and 4, 2008.  Plaintiff filed a Reply and Responses to Defendant Adecco's Objections on June 16, 2008.

**B.  Plaintiff's Allegations**

Plaintiffs work at Defendant Celestica's shipping facility.  (SAC ¶ 15.)  Defendant Adecco is a temporary staffing agency that provides employees for Celestica. (<u>Id.</u> ¶ 10.)

Defendants require Plaintiffs to stand in line to pass through a checkpoint at the beginning and end of each shift.  (<u>Id.</u> ¶ 16.)  Plaintiffs spend 30 to 60 minutes waiting in checkpoint lines each day, and Defendants do not pay them for this time. (<u>Id.</u>)

Defendants regularly require Plaintiffs to work more than eight hours a day and fail to pay them for some or

1   all of the hours worked over eight hours each day.  (Id.

2   ¶ 17.)  Defendants regularly fail to provide thirty

3   minute meal periods each day, fail to provide a second

4   thirty minute meal period for Plaintiffs who work in

5   excess of ten hours in a day, and fail to provide two

6   paid rest breaks each day.  (Id. ¶¶ 18-19.)  Furthermore,

7   Defendants do not pay Plaintiffs an additional hour of

8   pay when Defendants deny Plaintiffs meal or rest periods.

9

10  (Id. ¶ 20.)

11

12

13

14              **II. EVIDENTIARY OBJECTIONS**

15      The Court does not address Defendant Adecco's

16  objections to evidence on which the Court did not rely in

17  the determination of this Motion, e.g., the Declarations

18

19  of Espinoza, Orozca, etc.

20

21

22      Defendant Adecco objects to certain records attached

23  to the Declaration of Helland and to the paragraphs of

24  that Declaration which describe the records.  (Adecco

25  Objections at 4-5.)  The Court does not address the

26

27  objections to records and paragraphs not relied on in the

28

determination of this Motion, i.e., the objections to paragraphs 4-5 and Exhibits B-D.

Defendant Adecco objects that paragraph 7 of the Declaration and Exhibit F attached thereto are irrelevant, speculative, conclusory, lack foundation, and lack personal knowledge.  (Adecco Objections at 5.) Defendant Adecco does not explain the basis of its objections, but merely states them in a conclusory fashion.  Exhibit F is a sample of timecard reports produced by Defendants.  (<u>See</u> Helland Decl. ¶ 7.) Accordingly, the objections are overruled as to Exhibit F, which is clearly relevant and is an admission from Defendants' own records.

## III. LEGAL STANDARD

Under Rule 23(a), in order to bring a class action, a plaintiff must demonstrate:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

5

> (4) the representative parties will
> fairly and adequately protect the
> interests of the class.

Fed. R. Civ. P. 23(a).


In addition to these prerequisites, a plaintiff must satisfy one of the prongs of Rule 23(b) in order to maintain a class action.  Where, as here, a plaintiff moves for class certification under Rule 23(b)(3), the plaintiff must prove that:

> the questions of law or fact common to
> class members predominate over any
> questions affecting only individual
> members, and that a class action is
> superior to other available methods for
> fairly and efficiently adjudicating the
> controversy.

Fed. R. Civ. P. 23(b).


Class actions have two primary purposes: to further judicial economy by avoiding multiple suits and to protect the rights of persons who "might not be able to present claims on an individual basis."  Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996). The party seeking class certification bears the burden of demonstrating that it has met each of the four

requirements of Rule 23(a) and at least one of the Rule

23(b) requirements.  <u>Zinser v. Accufix Research Inst.</u>,

253 F.3d 1180, 1186 (9th Cir. 2001).


    The Court acts as a fiduciary for the absent class

members, and "must conduct an independent and rigorous

analysis of the moving party's claims to examine whether

the requirements of Rule 23 are met."  <u>In re Paxil</u>

<u>Litig.</u>, 212 F.R.D. 539, 543 (C.D. Cal. 2003) (quotations,

citation omitted).  In addition, to meet its burden the

moving party "'must provide facts to satisfy these

requirements; simply repeating the language of the rules

. . . is insufficient.'"  <u>Id.</u> (quoting <u>Bates v. United</u>

<u>Parcel Serv.</u>, 204 F.R.D. 440, 443 (N.D. Cal. 2001))

(ellipsis in original).


**IV. DISCUSSION**

    Plaintiffs seek certification of two classes.  The

proposed "security line class" consists of

> [a]ll current and former non-exempt
> employees of Defendants, paid by
> Defendant Adecco USA, Inc., who passed
> through security screening before, during
> or after their work shift, in Celestica's

                    facility  at  13473  Santa  Ana  Avenue,
                    Fontana, California, since June 14, 2003.

(Reply at 1.)[1]


     Plaintiffs propose a "meal and rest period class"

consisting of

                    [a]ll  current  and  former  non-exempt
                    employees of Defendants, paid by Adecco
                    USA,  Inc.  who  worked  at  Celestica's
                    facilities  at  13473  Santa  Ana  Avenue,
                    Fontana, California and 1392 North Sarah
                    Place, Ontario, California, and who were
                    entitled  to  receive  meal  and/or  rest
                    periods, since June 14, 2003.

(Id.)

_____

     [1] In their Motion, Plaintiffs sought certification of
a security line class of "[a]ll current and former non-
exempt employees of Defendants who passed through
security screening before, during or after their work
shift, in Celestica's facility at 13473 Santa Ana Avenue,
Fontana, California, since June 14, 2003" and a meal and
rest period class of  "[a]ll current and former non-
exempt employees of Defendants who worked at Celestica's
facilities at 13473 Santa Ana Avenue, Fontana, California
and 1392 North Sarah Place, Ontario, California, and who
were entitled to receive meal and/or rest periods, since
June 14, 2003."  (Mot. at 1.)  In their Reply, however,
Plaintiffs withdrew their certification motion as to
employees paid by Defendant Celestica and proposed the
above class definitions which are limited to employees
paid by Defendant Adecco.  (See Reply at 1-2.)

Defendant Celestica argues that both these class definitions are overbroad because (1) neither of the facilities started employing workers until after 2003; and (2) the term "non-exempt" is not precise or objective.  (Celestica Opp'n at 12 (citing O'Connor v. Boeing North America, Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998) (requiring precise, objective, and ascertainable class definitions)).)  That the class period starts in 2003, however, does not lessen the ascertainability of the class: it simply does not include members from dates when no employees existed.  Contrary to Celestica's assertions, the term "non-exempt" is subject to a precise legal definition.  See Heffelfinger v. Electronic Data Systems Corp., 2008 WL 2444690, at *9-*10 (C.D. Cal. 2008) (defining the term under both California law and the FLSA).  Indeed, courts have approved class definitions using this term.  See, e.g., In re Wells Fargo Loan Processor Overtime Pay Litigation, 2008 WL 2397424, at *6-*8 (N.D. Cal. 2008).

Plaintiffs' proposed meal and rest period class definition is overbroad, however.  The class must be

9

defined to reflect the way in which the potential plaintiffs are alleged to be similarly situated and share common claims.  The California Labor Code, under which Plaintiffs bring their meal and rest period claims, requires employers to provide meal and rest periods as mandated by the Industrial Welfare Commission.  See, e.g., Cal. Lab. Code § 226.7.  Each plaintiff in the class, therefore, must allege a violation of these requirements.

The Court therefore amends the proposed class definition so that it reads as follows:

> All current and former non-exempt employees of Defendants, paid by Adecco USA, Inc. who worked at Celestica's facilities at 13473 Santa Ana Avenue, Fontana, California and 1392 North Sarah Place, Ontario, California, and who, at any time since June 14, 2003, were not provided a meal or rest period to which they were entitled.

The claims of the purported meal and rest period class arise from three alleged aspects of Defendants' policies and facilities:

///

10

- failure to pay required premiums when employees are denied meal or rest breaks
- failure to provide a second meal period after ten hours of work; and
- failure to provide suitable resting facilities close to Plaintiffs' work stations.

(Mot. at 1; 6-9; Reply at 9-14.)

The claims of the purported security line class arise from Defendants' alleged policies and practices of:

- requiring employees to undergo security screening before clocking in for their shifts and after clocking out at the end of their shift;
- "shift rounding," in which time clocks automatically "erase employees' time when they arrive early or leave late, but record each minute that employees arrive late or leave early;" and
- manually altering employees' time records to delete time recorded for unapproved overtime.

(Mot. at 2-6.)

///

A.   Numerosity

11

In determining whether under Rule 23(a)(1), joinder of all members is "impracticable," courts have held that the plaintiff need not show that it would be "impossible" to join every class member.  <u>Haley</u>, 169 F.R.D. at 647.  Additionally, there is no specific number cut-off, as the specific facts of each case may be examined.  <u>Ballard v. Equifax Check Servs., Inc.</u>, 186 F.R.D. 589, 594 (E.D. Cal. 1999).  Courts have not required evidence of specific class size or identity of class members to satisfy the requirements of Rule 23(a)(1).  <u>Robidoux v. Celani</u>, 987 F.2d 931, 935 (2d Cir. 1993).

Moreover, courts have held that "[w]here the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied."  <u>Orantes-Hernandez v. Smith</u>, 542 F. Supp. 351, 370 (C.D. Cal. 1982).  Courts have held that numerosity is satisfied when there are as few as 39 potential class members.  <u>Patrick v. Marshall</u>, 460 F. Supp. 23, 26 (N.D. Cal. 1978).

1    Here, Plaintiffs provide evidence that Defendant
2  Adecco furnished approximately 3,965 non-exempt employees
3  to work at Celestica's Fontana facility during the period
4  relevant here.  (Helland Decl. Ex. G, Defendant Adecco
5  USA, Inc.'s Response to Interrogatories ("Adecco
6  Interrogatories") at 11.)  Before the start of each
7  shift, Defendant Celestica requires all of those
8  employees to undergo security screening before clocking
9  in to work and after clocking out at the end of each
10 shift.  (Helland Decl. Ex. I, Kozar Depo. ("Kozar Depo.")
11 at 93-94, 96; Helland Decl. Ex. K, Campbell Depo.
12 ("Campbell Depo.") at 9-10, 15-16.)
13
14
15   Defendant Adecco argues that Plaintiff's evidence is
16 insufficient to establish numerosity because "evidence of
17 possible membership is not evidence of actual numerosity
18 existing in either of Plaintiff's proposed classes."
19 (Adecco Opp'n at 25 (emphasis in original) (citing Siles
20 v. ILGWA Nat'l Ret. Fund, 783 F.2d 923, 930 (9th Cir.
21 1986)).)  Plaintiffs provide evidence, however, that all
22 3,965 Adecco-furnished employees were required to go
23 through security screening, and thus are all members of

13

the proposed security line class.  (Kozar Depo. at 93-94,
96; Campbell Depo at 9-10, 15-16.)  Accordingly,
Plaintiffs have established numerosity of the proposed
security line class.

     In contrast, Plaintiffs provide no evidence as to how
many of the 3,965 Adecco-furnished employees "were
entitled to receive meal and/or rest periods," and thus
fall within the definition of the proposed meal and rest
period class.  (<u>See</u> Mot. at 1 (limiting the class to
employees "who were entitled to receive meal and/or rest
periods").)  Defendant Adecco admits, however, that all
the employees it furnishes to Celestica are scheduled to
work eight-hour shifts.  (<u>See</u> Adecco Opp'n at 4-5; Kozar
Depo. at 36.)  Thus, all 3,965 of these employees would
be members of the proposed meal and rest period class,
because all were entitled to receive meal and rest
periods during their eight-hour shifts.  <u>See</u> Cal. Lab.
Code §§ 226.7, 512.  Accordingly, Plaintiffs have
established numerosity of the proposed meal and rest
period class.

**B.   Commonality**

Courts have construed Rule 23(a)(2)'s commonality requirement permissively.  <u>Staton v. Boeing Co.</u>, 313 F.3d 447, 462 (9th Cir. 2002).  As the Ninth Circuit has explained:

> All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

<u>Id.</u> (quoting <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998)).

Additionally, this Court has stated that "the commonality requirement is interpreted to require very little."  <u>Paxil</u>, 21 F.R.D. at 549.  "[F]or the commonality requirement to be met, there must only be one single issue common to the proposed class."  <u>Haley</u>, 169 F.R.D. at 648.

**1.   Security Line Class**

Here, Plaintiffs argue that the common legal question for the proposed security line class is whether employees

15

are entitled to pay for the time they spend waiting in

line for security, passing through security, and waiting

in line to clock in or out.  (Mot. at 11.)   Indeed,

Defendant Adecco concedes in its Opposition that the

claims of the proposed security line class hinge on this

legal issue.  (See Adecco Opp'n at 19-23; see also infra

at E.2 (explaining that this legal issue predominates

over individual questions raised by the security line

class' claims).)


     Defendant Adecco argues there is no real question of

law at issue in the security line claims, because time

spent in a security line is not compensable as a matter

of law.  (See Adecco Opp'n at 19-23).   In Gorman v.

Consolidated Edison Corp., plaintiffs sued under the Fair

Labor Standards Act ("FLSA") for "payment of wages for

the time it takes for security-related procedures at

ingress to the plant, for suiting up, for some

intervening steps, and for the same in reverse."  488

F.3d 586, 589 (2d Cir. 2007).  Like Plaintiffs here, the

plaintiffs in Gorman "spen[t] between ten and thirty

minutes a day passing through multiple layers of security

and suiting up" at the beginning of their shifts.   <u>Id.</u>
at 591.   The Second Circuit held that this time was not
compensable under the FLSA because, while
"indispensable," it was not "integral" to the employees'
principal job activities.   <u>Id.</u> at 593.


     Similarly, in <u>Bonilla v. Baker Concrete Constr.,
Inc.</u>, plaintiffs who worked at an airport sued under the
FLSA for compensation the time it took to get through
airport security and from there to their job site each
day.   487 F.3d 1340, 1341 (11th Cir. 2007).   The Eleventh
Circuit agreed with the Second Circuit that time spent
going through security was not "integral" to the
employees' principal job activities and thus was not
compensable under the FLSA.   <u>Id.</u> at 1345.


     Plaintiffs argue, however, that these cases are
inapposite because they involve claims under the FLSA,
while Plaintiffs assert claims under the California Labor
Code.   (Reply at 3-4.)   Indeed, the California Supreme
Court has expressly held that courts should *not* rely on
interpretations of the FLSA to determine what is

compensable under the California Labor Code.  _Morillion v. Royal Packing Co._, 22 Cal. 4th 575, 588-94 (2000) (concluding that "the federal statutory scheme, which differs substantially from the state scheme, should be given no deference").

In _Morillion_, plaintiff agricultural workers sued for compensation for time they spent waiting for employers' buses and riding those buses to and from the fields each day.  _Id._ at 579.  The court held that such "compulsory travel time is compensable" under the California Labor Code, because the employees were required to take the buses and thus were "subject to the control of [their] employer."  _Id._ at 585, 595.  Even time spent waiting for the buses was compensable.  _Id._ at 587.

The _Morillion_ court distinguished time spent in an ordinary commute, or time spent on personal grooming required for a job, which are not compensable.  _Id._ at 586.  The primary distinguishing factor is "the level of control [the employer] exercises by determining when,

18

where, and how plaintiffs must travel." Id. The court explained,

> employees who commute to work on their own decide when to leave, which route to take to work, and which mode of transportation to use. By commuting on their own, employees may choose and may be able to run errands before work and to leave from work early for personal appointments.

Id. Despite their freedom to read or even sleep while waiting for or riding the buses, the Morillion employees were under the control of their employer during those periods, because they were not free to "use the time effectively for their own purposes." Id. at 586.

Here, Plaintiffs argue that when they are in the security line, like the Morillion employees waiting for buses, they are under the control of their employer. (Reply at 4-6.) Indeed, Plaintiffs present evidence that they were not allowed to leave the premises after passing through security before the beginning of a shift, were told to stand in lines marked by tape on the floor while waiting to pass through security, and were at least occasionally disciplined by Defendants while in the

1    security line.  (Id. at 5 (citing Kozar Depo. at 41-42;

2    Saenz Depo. at 32-33).)

3

4

5        For their argument that security line time is not

6    compensable, Defendants cite only two cases involving

7    California Labor Code claims: Overton v. Walt Disney Co.

8    and Cornn v. United Parcel Service, Inc.  Neither case,

9    however, contradicts Plaintiffs' assertion that security

10   line time is compensable under Morillion.

11

12

13

14       In Overton v. Walt Disney Co., plaintiffs sought

15   compensation for time spent parking and taking a shuttle

16   to their jobs at Disneyland.  See 136 Cal. App. 4th 263,

17   266-68 (2006).  The court held that the plaintiffs' time

18   on the shuttle buses was not compensable because, unlike

19   in Morillion, Disney did not require its employees to

20   take its shuttle buses; instead, they could have "walked,

21

22   biked, [taken] the Metrolink train, or [been] dropped off

23   [or] picked up."  Id. at 271 & n.12.  Here, in contrast,

24   Defendants require Plaintiffs to go through the security

25

26   line before work.  Accordingly, Plaintiffs' claim for

27

28
                                20

compensation for time spent in Defendants' security line
is consistent with the standard set in Overton.

In Cornn, plaintiffs sought compensation for, among
other things, time they spent punching the time clock
before a shift.  Cornn v. United Parcel Service, Inc.,
No. C03-2001 TEH, 2005 WL 2072091, at *4 (N.D. Cal.
2005).  Unlike Plaintiffs here, who contend they spend up
to fifteen minutes in the security line before and after
each shift (see, e.g., Hernandez Decl. ¶¶ 8-13), the
Cornn plaintiffs admitted that they spent only "a few
seconds" punching in.  Cornn, 2005 WL 2072091, at *4.
The Cornn court found that this time was de minimus and
thus not compensable.  Id.  The court, in dicta,
commented that additionally Plaintiffs had cited no
authority stating that time spent punching in is
compensable.  Id.  In contrast, here Plaintiffs have
cited a California Supreme Court case holding that time
spent under the control of an employer is compensable.
(See Reply at 3-5 (citing Morillion, 22 Cal. 4th at 578,
583-84, 586).)  Cornn thus does not bar Plaintiffs'
claims for compensation for security line time.

Unlike the plaintiffs in <u>Morillion</u>, however, Plaintiffs here are not required to appear at the security line at a specific time.  Thus, the pre-shift security line requirement in this case may be more akin to time spent in an ordinary commute, where employees may choose to start earlier or later depending on their own judgment.  The Court need not decide whether Plaintiffs' pre-shift time is compensable, because, as explained below, there is a common issue of law as to whether the post-shift security line time is compensable.

Unlike the time Plaintiffs spend in the security line before their shifts, they have no choice about when to arrive at the security line at the end of the shift. Like the plaintiffs in <u>Morillion</u>, Plaintiffs are under the control of their employers while in the security line at the end of the shift: they cannot choose to leave the premises without going through the line, nor can they choose to run a personal errand before going through the line.  <u>Cf.</u> <u>Morillion</u>, 22 Cal. 4th at 586 (explaining that pre- or post-shift time is not compensable when employees

22

1   "may choose and may be able to run errands before work

2   and to leave from work early for personal appointments").

3

4

5       Plaintiffs have thus established at least one

6   question of law common to all members of the security

7   line class: whether time spent in the security line at

8   the end of a shift is compensable under the California

9   Labor Code.

10

11

12

13      **2.   Meal and Rest Period Class**

14      Plaintiffs argue there are common issues of fact for

15  the proposed meal and rest period class.  First, they

16  allege that Defendant Adecco maintains a common corporate

17  policy under which it has never paid a meal or rest

18  period premium to any employee.  (Mot. at 11-12 (citing

19  Campbell Depo. at 45-46, 59).)  Second, they allege that

20  for portions of the class period, Defendant maintained a

21  uniform policy of denying all employees their second

22  thirty minute meal period when they worked ten hours or

23  more.  (Id. at 12 (citing Helland Decl. Ex. M, Saenz

24  Depo. ("Saenz Depo") at 34-35).)  Plaintiffs also offer

25  their own depositions to show that they did not receive a

26

27

28

23

second meal period after ten hours.  (Id.)  Finally,

Plaintiffs argue there is a common question of fact as to

whether Defendants provided employees with legally

sufficient resting facilities.  (Id. at 12-13.)


    Plaintiffs cite to Dukes v. Wal-Mart, Inc. for their

proposition that the Court can infer a corporate policy

from anecdotal evidence such as that proffered by

Plaintiffs in their depositions.  (Mot. at 11 (citing

Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1183 (9th Cir.

2007).  In Dukes, however, the Ninth Circuit upheld the

district court's finding of commonality based on

Plaintiffs' showing of not only anecdotal evidence, but

also direct factual evidence, expert testimony, and

statistical evidence of a corporate policy that affected

all class members commonly.  Dukes, 509 F.3d at 1178-82.


    Indeed, the Dukes court implied that anecdotal

evidence was not sufficient to prove commonality, but

upheld the finding of commonality because "the district

court did not state that this anecdotal evidence provided

sufficient proof to establish commonality by itself, but

rather noted that such evidence provides <u>support</u> for Plaintiffs' contention that commonality is present." <u>Id.</u> at 1182 (emphasis in original).

Here, Plaintiffs contend that, as in <u>Dukes</u>, there is more than mere anecdotal evidence of a common corporate policy of denying a second meal period.  First, they provide statistical evidence that a review of "ten percent of the payroll records for the  putative class . . . [revealed] 4,716 instances in which employees worked ten hours or more in a day."  (Helland Reply Decl. ¶ 10.)

Second, Plaintiffs provide declarations as evidence that when class members worked more than ten hours, they did not receive a second lunch break.  For example, putative class member Reyes testified that "every time [he] had overtime and . . . worked more than ten hours, [he] got a third break at 3:30, and it was always ten minutes," and that he did not "ever get a second lunch period."  (Helland Decl. Ex. R, Reyes Depo. at 144-45.) Plaintiffs provide no evidence, however, as to how often Mr. Reyes worked more than ten hours.  Other employees

25

similarly aver that they never got a second lunch period.

(See Helland Decl. Ex. P, Flores Depo. at 151; see also

id. Ex. T, Holmes Decl. ¶ 8 (worked more than ten hours

"on occasion"); id. Ex. U, Morales Decl. ¶ 8 (same); id.

Ex. U, Simpkins Decl. ¶ 8 (same); id. Ex. V, Orozco Decl.

¶ 8 (same); id. Ex. Y, Espinoza Decl. ¶ 8 (same); id. Ex.

BB, Ruedas Decl. ¶ 8 (same).)


     Plaintiffs argue the testimony of Monica Saenz

provides direct evidence of Defendants' alleged policy of

not providing a second meal period after ten hours.

(Mot. at 7.)  Ms. Saenz, however, was not involved with

deciding when meal and rest breaks occurred.  She

testified that her job responsibilities solely consisted

of processing payroll, "be[ing] there for the employees,"

and providing customer service to the client (Celestica).

(Saenz Depo. at 12.)  Indeed, when asked whether

employees ever got a second meal break, or whether there

was a policy of providing such a second meal break, Ms.

Saenz testified "I don't know."  (Id. at 34-35.)

Accordingly, Ms. Saenz's testimony is insufficient to

establish a common company policy of denying second meal periods.

Plaintiffs do, however, provide direct evidence that Defendant Adecco's representatives responsible for paying class members did not recall ever paying a premium for missed meal and rest periods.  (See Campbell Depo. at 45-46.)  Indeed, an Adecco supervisor responsible for adjusting paychecks for missed second meal periods did not recall adjusting paychecks for class members. (Helland Decl. Ex. L, Marez Depo. at 48-49.)

This direct evidence that no premium was paid for missed meal periods, combined with testimony that class members did miss meal periods when they worked more than ten hours and statistical evidence that class members worked more than ten hours in thousands of instances, is enough to show a "common core of salient facts."  See Staton, 313 F.3d at 462.  Like the Dukes plaintiffs, Plaintiffs here have shown not only anecdotal evidence, but also direct factual evidence, and statistical evidence from which the Court can infer a corporate

policy that affected all class members commonly.  Cf.

Dukes, 509 F.3d at 1178-82.  Accordingly, Plaintiffs have

established commonality as to the meal and rest period

class.

**C.   Typicality**

     To gauge typicality, a "court does not need to find

that the claims of the purported class representative are

identical to the claims of the other class members."

Haley, 169 F.R.D. at 649.  The Ninth Circuit in Hanlon

further wrote that "[u]nder the rule's permissive

standards, representative claims are 'typical' if they

are reasonably co-extensive with those of absent class

members; they need not be substantially identical."  150

F.3d at 1020.  Additionally, the class representatives

"must be able to pursue [their] claims under the same

legal or remedial theories as the unrepresented class

members."  Paxil, 21 F.R.D. at 549.

     While commonality requires only one unifying factual

or legal question, typicality requires "'that the claims

of the class representatives be typical of those of the

class'" and is achieved "'when each member's claim arises

from the same course of events, and each class member

makes similar legal arguments to prove the defendant's

liability.'"   In re Paxil Litig., 212 F.R.D. 539, 550

(C.D. Cal. 2003) (quoting Armstrong v. Davis, 275 F.3d

849, 868 (9th Cir. 2001)).


    Here, Plaintiffs' claims are typical of those of the

security line class members because Plaintiffs were

subject to the same security procedures as all class

members.  (See Mot. at 13-14.)  Their claims are typical

of the meal and rest period class because they, like

other class members, allegedly were denied meal and rest

period premiums, second meal breaks, and suitable resting

facilities by Defendants.  (Mot. at 14.)[4]  Accordingly,

Plaintiffs have established typicality as to both

proposed classes.

_____

    [4]Defendant Celestica argues that Plaintiffs, as
Adecco employees, are not typical of Celestica employees.
(Celestica Opp'n at 13.)  This argument is moot after
Plaintiffs' withdrawal of their request to include
Celestica employees in the class definition.  (See Reply
at 1.)

**D.   Adequacy**

Traditionally, courts have engaged in a two-part analysis to determine if the plaintiffs have met the requirements of Rule 23(a)(4): (1) the class representatives must not have interests antagonistic to the unnamed class members and (2) the representatives must be able to prosecute the action "vigorously through qualified counsel." Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978).

### 1.   Named Class Members

Plaintiffs argue that they are adequate representatives of the class. (Mot. at 14-15.)  They have diligently participated in the litigation and have no conflicts that would prevent them from representing the proposed classes. (Reyes Depo. at 192.)  Defendant Adecco does not argue that named Plaintiffs or their counsel are inadequate, but refers to its argument that common issues do not predominate under Rule 23(b). (Adecco Opp'n at 25.)  As employees of Adecco who were subject to the security line policy and the alleged meal and rest period violations, named Plaintiffs appear able

30

to represent the security line and meal and rest period classes adequately.

Defendant Celestica argues that named Plaintiffs are inadequate because, as _former_ employees of Adecco, they are not representative of _current_ employees, and would not pursue vigorously remedies such as injunctive relief that would benefit current employees.  (Celestica Opp'n at 15-16 (citing _Amchem Prods., Inc. v. Windsor_, 521 U.S. 591, 626-27 (1997)).)  Celestica provides no evidence, however, to support its assertion that named Plaintiffs are all former, rather than current, employees. Moreover, Celestica admits that the proposed class members furnished by Adecco are all "temporary" employees, furnished to Celestica on a "temporary" basis. (Celestica Opp'n at 4.)  The interests of such temporary employees, who may expect to become "former" employees, are not significantly different from the interests of former employees.  Thus, even assuming Plaintiffs are not

///

///

current employees, Plaintiffs could adequately represent
the proposed classes.[5]

### 2.   Qualified Counsel

Adequate representation "'depends on the
qualifications of counsel for the representatives, an
absence of antagonism, a sharing of interests between
representatives and absentees, and the unlikelihood that
the suit is collusive.'"  Paxil, 212 F.R.D. at 550
(quoting Crawford v. Honig, 37 F.3d 485, 487 (9th Cir.
1994).  Courts now determine the adequacy of counsel
under Rule 23(g).  See, e.g., Hill v. Merrill Gardens,
L.L.C., 2005 WL 2465250, *3 (N.D. Ind. 2005).

---

[5] Defendant Celestica also argues that several named
Plaintiffs are antagonistic toward Celestica and its
employees, and thus are inadequate to represent Celestica
employees.  (Opp'n at 16 (providing no authority for its
assertion that Plaintiffs "distinguished themselves from
permanent Celestica employees" and seek "vengeance"
against Celestica).)  This argument is moot after
Plaintiffs' withdrawal of their request for class
certification as to Celestica employees.  (See Reply at 1.)

Rule 23(g) provides,

> a court that certifies a class must
> appoint class counsel. In appointing
> class counsel, the court:
> (A) must consider:
> (1) the work counsel has done in
> identifying or investigating potential
> claims in the action;
> (ii) counsel's experience in handling
> class actions, other complex litigation,
> and the types of claims asserted in the
> action;
> (iii) counsel's knowledge of the
> applicable law; and
> (iv) the resources that counsel will
> commit to representing the class.

Fed. R. Civ. P. 23(g).


Here, Plaintiffs aver that their counsel consists of

a qualified law firm with extensive experience in class

action and wage and hour litigation. (Mot. at 15.) The

firm employs twenty lawyers and has represented employees

exclusively for the past fifteen years. (Id. (citing

Helland Decl. ¶ 12).)  It has represented over 25,000

employees in such cases and currently is counsel of

record on over fifty class or collective action cases,

most of which are wage and hour cases.  (Id.)

Plaintiffs' lead counsel has practiced law for twenty-

five years.  (Id. (citing Helland Decl. ¶ 13).)

33

Plaintiffs have demonstrated sufficiently that their counsel will represent the proposed classes adequately. Counsel has identified and investigated the claims in this action, has extensive experience handling class actions similar to this one, has demonstrated knowledge of the applicable law, and has adequate resources to represent the proposed classes.

**E.   Whether Common Issues of Fact and Law Predominate**

In addition to meeting the above prerequisites for class certification under Rule 23(a), a plaintiff must satisfy one of the prongs of Rule 23(b) in order to maintain a class action. Where, as here, a plaintiff moves for class certification under Rule 23(b)(3), the plaintiff must prove that:

> the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually
> controlling the prosecution or defense of separate actions;

1          (B)  the  extent  and  nature  of  any
2     litigation
      concerning  the  controversy  already  begun
3     by
      or against class members;
4          (C) the desirability or undesirability of
5     concentrating  the  litigation  of  the
      claims in
6     the particular forum; and
      (D) the likely difficulties in managing a
7     class
      action.
8

9  Fed. R. Civ. P. 23(b).
10

11

12     **1.  Meal and Rest Period Class**

13     Defendant Adecco cites <u>Lanzarone v. Guardsmark</u>

14 <u>Holdings, Inc.</u> for its proposition that Plaintiffs cannot

15 demonstrate that common questions predominate over the

16 meal and rest period claims without producing "documents,

17 clear corporate witness testimony, or other direct

18 evidence showing that the company systematically violates

19 meal and rest period laws . . . ."   (Adecco Opp'n at 12

20 (citing <u>Lanzarone v. Guardsmark Holdings, Inc.</u>, No. CV06-

21 1136 R(PLAx), 2006 WL 4393465, at *4 (C.D. Cal. 2006)).)

22 <u>Lanzarone</u>, however, does not require "clear corporate

23 witness testimony," but only "testimony . . .  that the

24 ///
25

26

27

28
                              35

company systematically violates meal and rest period laws." <u>Lanzarone</u>, 2006 WL 4393465, at *4.

Here, Plaintiffs have provided Adecco's corporate representative's testimony that Adecco has never paid a meal or rest period premium to any employee. (<u>See</u> Campbell Depo. at 45-46, 59.)  Plaintiffs argue the Court can infer Defendants had a systematic corporate policy of denying a second meal period from anecdotal evidence that Defendants uniformly failed to provide such a period. (Mot. at 17.)

Defendant Adecco argues, however, that an individualized factual determination will be required to decide if Plaintiffs were actually deprived of meal or rest periods and whether Adecco knew or should have known of the missed period.  (Adecco Opp'n at 13.)  For instance, Defendants point out that while Plaintiffs all aver in their depositions that they missed rest or meal periods, the reasons why Plaintiffs and other employees missed the breaks, and the number of periods they missed, differed.  (Opp'n at 13 (citing Patterson Decl. Ex. 3,

Santos Depo. at 65, 95; Patterson Decl. Ex. 4, Flores
Depo. at 131-33, 141-45, 150; Patterson Decl. Ex. 1,
Cervantez Depo. at 55, 109, 174-76, 178-80, 183-84, 219-
220, 236, 263, 264; Patterson Decl. Ex. 2, Reyes Depo. at
108-109, 173; Patterson Decl. Ex. 8, Marez Depo. at 41-
42; Patterson Decl. Ex. 9, Saenz Depo. at 39; Patterson
Decl. Ex. 11, Palmerin Depo. at 32; Patterson Decl. Ex.
13, Darwin Depo. at 30).)

     Plaintiffs counter that although they may have been
denied meal or rest periods for different reasons, their
claims all arise from Defendant's uniform and class-wide
policies and procedures.  (Mot. at 14 (citing Dukes, 509
F.3d at 1184 (claims need not be "substantially
identical.  Some degree of individuality is to be
expected in all cases")).)

     In Brown v. Federal Express Corp., the court declined
to certify a class alleging claims for meal and rest
break violations, finding that individual issues
predominated over common issues.  Brown v. Federal
Express Corp., No. CV 07-5011 DSF(PJWx), 2008 WL 906517,

at *7 (C.D. Cal. 2008).  The court held that "Plaintiffs may prevail only if they demonstrate that [the defendant's] policies deprived them of those breaks. Any such showing will require substantial individualized fact finding."  Brown, 2008 WL 906517, at *6.

In Brown, however, unlike here, the proposed class consisted of drivers and couriers who worked out of disparate facilities throughout California with widely varying job duties and schedules, and were subjected to different monitoring and expectations.  Id. at *6-*7. The court emphasized this variance of individual circumstance and noted that "Plaintiffs propose no method of common proof that would establish that [the defendant's] policies prevent drivers from taking required breaks, regardless of their individual circumstances."  Id. at *7.

Here, Defendant Adecco argues that proposed meal and class period members have worked in approximately forty different job positions including administrative, clerical, production, assembly, shipping and receiving,

38

and janitorial positions.[6]  (Adecco Opp'n at 2.)  Unlike

in <u>Brown</u>, however, here all proposed class members worked

in the same two buildings (Mot. at 1, 2; Helland Decl. ¶

38 (explaining the buildings are only 2.7 miles apart),

and were all scheduled to work eight-hour shifts (<u>see</u>

Adecco Opp'n at 4-5; Kozar Depo. at 36.)


     Moreover, Defendant Adecco admits that all the

employees it furnished to Celestica were subject to the

same policies with respect to meal and rest periods (<u>see</u>

Adecco Opp'n at 5-6 (contending that "during a typical

eight-hour shift, Adecco's associates at Fontana or SMI

receive a 30-minute unpaid meal break and two paid 10-

minute rest breaks," which is automatically deducted from

all employees' time cards, "a second 30-minute meal

---

     [6] Defendant Adecco provides no authority for
its assertion that proposed class members worked at
forty different positions including administrative,
clerical, production, assembly, shipping and
receiving, and janitorial positions.  Defendant
Adecco cites to its responses to Interrogatories,
but it did not provide a copy of those responses
with its Opposition.  (See Adecco Opp'n at 2
(citing "Adecco USA, Inc.'s Response to Plaintiffs'
Interrogatories, Set 1, p. 11-15").)

period on shifts that exceed 10 hours," that is "manually deducted from associate time records,"  and that "[p]roduction lines (or "cells") at both Fontana and SMI take breaks and meal periods on a staggered basis to ensure sufficient seating space in the designated break areas").)

Indeed, Adecco admits to maintaining a written, uniform, meal break and rest period policy for all the employees it furnishes to Celestica, which it periodically distributes at Celestica's facilities.  (<u>Id.</u> at 6.)  Thus, whether or not the employees it furnishes to Celestica work in different job positions, their meal and rest breaks are subject to a common policy and thus are subject to common proof.

Ultimately, the key factual questions going to the claims of the proposed meal and rest break class are all subject to common proof.  Plaintiffs' claim for denial of second meal periods hinges on whether there was a common corporate policy of granting or denying such periods. (<u>Compare</u> Saenz Depo. at 34-35 (testifying as to a policy

of denying such periods) <u>with</u> Adecco Opp'n at 5-6
(contending there was a policy of granting such
periods).)  Plaintiffs' claim for failure to pay meal
premiums depends on proof of a common corporate policy
regarding payment of such premiums.  (<u>See</u> Campbell Depo.
at 45-46, 59 (stating that such premiums were never
paid).)  Finally, Plaintiffs' claim that Defendants did
not provide adequate resting facilities is subject to
common proof by a diagram of the facilities and the
testimony of one or two witnesses familiar with the
facilities.  (<u>See</u>, <u>e.g.</u>, Celestica Opp'n at 6-7
(describing in detail the location of each rest facility,
including one opened in 2006 and one opened in 2007).)
Accordingly, questions of fact common to the proposed
meal and rest period class members predominate over any
questions affecting only individual members, and a class
action is superior to other available methods for fairly
and efficiently adjudicating their claims.


   **2.   Security Line Class**

   Defendant Celestica argues that individual issues
would predominate over the security line class's claims,

41

because the court would have to determine the precise

amount of time each class member spent in the line.

(Celestica Opp'n at 19-20.)  The precise amount of time

each class member spent in line, however, goes only to

damages, and can be established by class member

estimates.  See Anderson v. Mt. Clemens Pottery Co., 328

U.S. 680, 687-88 (1946) (where an employer has failed to

keep accurate time records, an employee may be awarded

damages based on a reliable estimate of compensable

time), superseded on other grounds by statute as noted in

Carter v. Panama Canal Co., 463 F.2d 1289 (D.C.Cir.

1972); Local Joint Executive Bd. of Culinary/Bartender

Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1163

(2001) (holding that where a common legal issue

predominates, and damages for individual class members

are subject to "a straightforward calculation of which

days and how many hours they would have worked," Rule

23(b) is satisfied).


     Indeed, Defendant Adecco admits there is one

overarching question of law that affects the claims of

the security line class: whether proposed class members

are entitled to wages for time spent waiting in the security line.  (See Adecco Opp'n at 19-23 (arguing that such time is not compensable, and that Plaintiffs' evidence regarding how much time they spent waiting in such lines is irrelevant because "putative class members are entitled to compensation only for the time they have spent actually working").)  As Defendant Adecco points out in its extensive argument on this legal issue, Plaintiffs' security line claims hinge on whether such time is compensable.  (See id.)  Accordingly, this question of law common to the proposed security line class members predominates over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the claims of the proposed security line class.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion for Class Certification of the following classes:

(a) The "security line class," defined as:

> All current and former non-exempt employees of Defendants, paid by Defendant Adecco USA, Inc., who passed through security screening before, during or after their work shift, in Celestica's facility at 13473 Santa Ana Avenue, Fontana, California, since June 14, 2003.

(b) The "meal and rest period class," defined as:

> All current and former non-exempt employees of Defendants, paid by Adecco USA, Inc. who worked at Celestica's facilities at 13473 Santa Ana Avenue, Fontana, California and 1392 North Sarah Place, Ontario, California, and who, at any time since June 14, 2003, were not provided a meal or rest period to which they were entitled.

The Court ORDERS Defendants to produce to Plaintiffs, within fourteen days of the date of this Order, a list of all persons who meet the class definitions as set forth above, including the person's name, address, telephone number, dates of employment with Defendants, and employee number. Within fourteen days of the date of this Order, the parties shall file a joint proposed notice.

Dated: ___July 30, 2008___        _____

                                          VIRGINIA A. PHILLIPS
                                      United States District Judge