NICHOLS KASTER, LLP
Matthew C. Helland, CA State Bar No. 250451
Helland@nka.com
One Embarcadero Center, Suite 720
San Francisco, CA  94111
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Attorneys for Plaintiffs and the Class

Julie E. Patterson, California Bar No. 167326
jepatterson@bryancave.com
Jesse E.M. Randolph, California Bar No. 221060
jesse.randolph@bryancave.com
**BRYAN CAVE LLP**
3161 Michelson Drive, Suite 1500
Irvine, California  92612
Telephone:  (949) 223-7000
Facsimile:   (949) 223-7100

Attorneys for Defendant ADECCO USA, INC.

Additional Attorneys Listed on Following Page

### IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| Jose Cervantez, et al, individually, on behalf of others similarly situated, and on behalf of the general public, | Case No. EDCV07-00729 VAP (OPx) |
| Plaintiffs, | **JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT** |
| v. | |
| Celestica Corporation, et al, | Honorable Virginia A. Phillips Riverside Division, Courtroom: 2 Hearing: June 21, 2:00 p.m. |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

NICHOLS KASTER, PLLP
James H. Kaster CA State Bar No. 248949
Kaster@nka.com
Paul J. Lukas, MN State Bar No. 22084X
Lukas@nka.com
(admitted *pro hac vice*)
4600 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878

ERVIN, COHEN & JESSUP LLP
Eric W. Cheung, CA State Bar No. 235008
echeung@ecjlaw.com
9401 Wilshire Blvd, 9th Floor
Beverly Hills, CA  90212
Telephone: (310) 281-6392
Facsimile: (310) 887-6874

Attorneys for Plaintiffs and the Class

DAVID F. FAUSTMAN, State Bar No. 081862
dfaustman@foxrothschild.com
ALEXANDER HERNAEZ, State Bar No. 201441
1800 Century Park East, Suite 300
Los Angeles, California 90067
Telephone:   (310) 598-4150
Facsimile:    (310) 556-9828

LUCINDA ODELL LAPOFF
llapoff@hselaw.com
HARTER SECREST & EMERY LLP
1600 Baush & Lomb Place
Rochester, NY 14604-2711
Telephone: (585) 231-1254
Facsimile: (585) 232-2152

Attorneys for Defendant CELESTICA CORPORATION

# **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...................................1

    a.   Factual Background .................................................................1

    b.   Procedural History .................................................................2

    c.   Discovery Completed.............................................................3

    d.   Description Of The Settlement Agreement .........................................4

        i.    Settlement Amount ..........................................................4

        ii.   Notice Provisions ..........................................................5

        iii.  Allocation Amongst Class Members ............................................6

        iv.   Release .....................................................................7

III.  ARGUMENT ......................................................................................8

    a.   This Court's Prior Class Certification Order Satisfies The Requirements Of Rule 23 At Settlement ............................................8

    b.   The Proposed Settlement Is Fair, Adequate, and Reasonable ..............9

        i.    Arms Length Negotiations .........................................................10

        ii.   Strength Of Plaintiffs' Case..........................................................10

        iii.  Risk, Expense, Complexity and Likely Duration of Further Litigation ...............................................................................11

        iv.   Amount Offered In Settlement .....................................................12

        v.    Extent of Discovery Completed and Stage of the Proceedings....13

        vi.   Experience and Views of Counsel ...............................................13

        vii.  Reaction of Class Members .........................................................13

    c.   The Proposed Named Plaintiff Enhancements Are Reasonable........14

    d.   The Proposed Notice Procedures Are Sufficient Under Fed.R.Civ.P. 23(e) ...................................................................................16

IV.   CONCLUSION ...............................................................................17

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**<u>Federal Rules</u>**

3

Fed.R.Civ.P. 23(e)(1) ................................................................................16

4

**<u>Cases</u>**

5

<u>Alberto v. GMRI, Inc.</u>, 2008 WL 4891201 (E.D.Cal. 2008) ............................13, 14

6

<u>Alexander Mfg., Inc. v. Illinois Union Ins. Co.</u>, 666 F.Supp.2d 1185 (D.Or. 2009)

7

  ....................................................................................................................10

8

<u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011 (9th Cir. 1998) ...................................8, 10

9

<u>Hopson v. Hanesbrands, Inc.</u>, 2009 WL 928133 (N.D.Cal. 2009) ........................14

10

<u>Hughes v. Microsoft Corp.</u>, 2001 WL 34089697 (W.D.Wash. 2001) ...................13

11

<u>Linney v. Cellular Alaska P'ship</u>, 151 F.3d 1234 (9th Cir. 1998) .........................13

12

<u>Officers for Justice v. Civil Service Com'n of City and County of San Francisco</u>,

13

  688 F.2d 615 (9th Cir. 1982).............................................................9, 10, 13

14

<u>Rodriguez v. West Publishing Corp.</u>, 563 F.3d 948 (9th Cir. 2009).......................16

15

<u>Satchell v. Federal Express Corp.</u>, 2007 WL 1114010 (N.D.Cal. 2007) ...............10

16

<u>Staton v. Boeing Corp.</u>, 327 F.3d 938 (9th Cir. 2003) ...........................................14

17

<u>Van Vranken v. Atlantic Richfield Co.</u>, 901 F.Supp. 294 (N.D.Cal. 1995)............14

18

19

20

21

22

23

24

25

26

27

28

ii

## I.   INTRODUCTION

After almost three years of contentious litigation, the parties come before this Court seeking approval of a $2,500,000 class action settlement that will lay this matter to rest.  A copy of the Class Action Settlement Agreement And Stipulation, with exhibits ("Settlement Stip.") is attached for the Court's review as Helland Declaration Exhibit 1.  As outlined in this memorandum, the Court should grant preliminary approval to the proposed settlement because it is a fair, adequate and reasonable resolution of Class Members' claims.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Background

This matter is a wage and hour class action in which Plaintiffs and Class Members seek, among other things, pay for time spent undergoing Defendants' security procedures before and after their scheduled shifts.  Due to extensive motion practice in this action, the Court is familiar with the facts.  The parties will recount them briefly here.

Plaintiffs and Class Members are temporary employees of Defendant Adecco USA, Inc.  <u>See</u> Order Granting In Part And Denying In Part Plaintiffs' Motion For Partial Summary Judgment, and Denying Defendant Adecco's Motion For Partial Summary Judgment ("SJ Order"), Dkt. 168 at 5.  Class Members work at Defendant Celestica Corporation's warehouse facilities at 13473 Santa Ana Avenue, Fontana, California and 1392 North Sarah Place, Ontario, California.  <u>See</u> Order Granting Motion For Class Certification ("Class Certification Order"), Dkt. 94 at 44.  Plaintiffs and Class Members are subject to security screening at Celestica's Fontana facility.  SJ Order, Dkt. 168 at 5.  Plaintiffs and Class Members also contend that Defendants violated California law regarding Meal and Rest Periods.  <u>See</u> Class Certification Order, Dkt. 94 at 10-11.  Plaintiffs and Class Members seek unpaid wages and associated penalties under California law.  <u>See</u> Second Amended Compl., at Dkt. 47.

1

**B.    Procedural History**

This matter has been heavily litigated since its inception.  Plaintiffs filed their original complaint on June 15, 2007.  See Dkt. 1.  Plaintiffs filed their First Amended Complaint on July 27, 2007.  See Dkt. 12. On August 10, 2007, Defendant Adecco filed its Motion for Order Striking Punitive Damages-Related Allegations From Plaintiffs' Complaint.  See Dkt. 14.  Defendant Celestica joined in that motion.  See Dkt. 21.  On October 5, 2007, the Court granted Adecco's motion to strike punitive damages.  See Dkt. 29.

On March 5, 2008, Plaintiffs filed their Second Amended Complaint.  See Dkt. 47.  On May 1, 2008, Plaintiffs filed their class certification motion.  See Dkt. 51.  On July 30, 2008, the Court granted Plaintiffs' motion for Class Certification. See Dkt. 94.

On October 6, 2008, Plaintiffs and Defendant Adecco filed cross motions for partial summary judgment.  See Dkts. 100, 104.  After those motions were fully briefed, but before they were argued before the Court, the parties engaged in a full-day mediation with respected mediator Mark S. Rudy, Esq. Helland Decl. ¶ 3; Helland Decl. Exh. 2.  This mediation took place on February 5, 2009. Helland Decl. ¶ 3.  The parties engaged in good faith, arms' length negotiations during that mediation, but were unable to reach a settlement agreement. Helland Decl. ¶  4. Subsequent to that mediation, Mr. Rudy continued to reach out to the parties in an attempt to settle the case.  Id..  Although the parties engaged in further discussions, no settlement was reached at that time.  Id.

The Court heard the parties' cross motions for partial summary judgment on April 20, 2009.  See Dkt. 167.  On  May 6, 2009, the Court denied Adecco's motion and granted in part and denied in part Plaintiffs' motion.  See Dkt. 168.  In response to the Court's summary judgment order, Defendant Celestica filed a Motion for Certification of Order for Interlocutory Appeal on May 20, 2010.  See Dkt. 169. The Court denied that motion on July 6, 2009.  See Dkt. 180.  On August 14, 2009,

1    the Court entered a scheduling order setting May 3, 2010 as the close of discovery

2    and scheduling the trial in this matter for August 3, 2010.  See Dkt. 184.

3        On April 1, 2010, the parties engaged in a second mediation with respected

4    mediator Mark S. Rudy, Esq. in San Francisco.  Helland Decl. ¶ 5.  The parties

5    engaged in good faith, arms' length negotiations.  Id.  That mediation eventually

6    resulted in the parties' Class Action Settlement and Stipulation.  Id.

7    **C.    Discovery Completed**

8        The parties have engaged in significant formal and informal discovery in this

9    matter.  Plaintiffs have taken the Fed.R.Civ.P. 30(b)(6) deposition of Adecco and

10   Celestica.  Helland Decl. ¶ 6.  Plaintiffs have deposed seven additional defense

11   witnesses.  Id.  Plaintiffs served three sets of interrogatories on Adecco and two sets

12   of interrogatories on Celestica, to which Adecco and Celestica responded.  Id.

13   Plaintiffs served four sets of document requests on Celestica and three sets of

14   document requests on Adecco.  Id.  In response to these requests, Celestica and

15   Adecco served almost 50,000 pages of responsive documents as well as voluminous

16   electronic data.  Id.  Plaintiffs served three sets of requests for admission on Adecco

17   and one set of requests for admission on Celestica, to which Defendants responded.

18   Id.  Plaintiff conducted two site inspections of Celestica's Fontana facility and one

19   site inspection of Celestica's Ontario facility.  Id.

20       Plaintiffs interviewed third party witnesses prior to class certification and

21   class members after class certification.  Helland Decl. ¶ 7.  Plaintiffs also

22   subpoenaed records from Securitas Security Services USA, Inc., Celestica's third

23   party security provider.  Id.  Securitas served over 6,500 pages of documents in

24   response to this subpoena.  Id.  Lastly, Plaintiffs retained Dr. Robert A. Bardwell as

25   an expert witness.  Id.  Dr. Bardwell produced an expert report and a rebuttal report

26   in response to Defendants' expert report.  Id.

27       Defendants conducted full day depositions of each of the five named

28   Plaintiffs.  Helland Decl. ¶ 8; Cervantez Decl. ¶ 8; Reyes Decl. ¶ 9; Santos Decl. ¶

3

8; Nguyen Decl. ¶ 8; Flores Decl. ¶ 8.  Defendants took partial day depositions of another five class members.  Helland Decl. ¶ 8.  Defendants also took declarations from numerous potential class members prior to class certification, which they submitted in opposition to Plaintiffs' motion for class certification.  Id.  Adecco served two sets of requests for production of documents on each of the named Plaintiffs, to which Plaintiffs responded.  Helland Decl. ¶ 8.  Adecco served a third set of discovery requests on Plaintiffs, to which Plaintiffs did not respond because the parties reached a settlement agreement.  Id.  Adecco also served interrogatories on named Plaintiffs, to which named Plaintiffs responded.  Id.  Defendant Celestica served a set of document requests on Adecco, to which Adecco responded.  Id.  Celestica and Adecco identified Robert Crandall as an expert witness, and served Mr. Crandall's expert report and expert rebuttal report.  Id.

### D.    Description Of The Settlement Agreement

The parties' submit their Class Action Settlement and Stipulation as Helland Exh. 1 for the Court's review.  For the Court's convenience, the parties will highlight the basic features of the agreement here.

### i.  Settlement Amount

The Settlement Stip. provides for a payment from Defendants in the amount of $2,500,000.00 to resolve this class action litigation.  Settlement Stip. § III.A.1. The payment will resolve the claims of both the Meal Period Class and the Security Line Class, certified by this Court on July 30, 2008.  See Class Certification Order, Dkt. 94 at 44; Settlement Stip. §§ II.Q., II.CC.  Of the $2,500,000.00 settlement amount, $625,000.00, or 25%, is allocated for Class Counsel's attorneys' fees, subject to this Court's approval.[1]  Settlement Stip. § III.A.1.  A maximum of $170,000.00 is allocated to Class Counsel's litigation costs, again subject to this

---

[1]  The parties respectfully request that the Court consider Class Counsel's fee request in conjunction with final approval.

4

Court's approval.[2]  Id.  The costs of Settlement Administration will also be taken from the $2,500,000.00.  Id.  The parties estimate these costs will be $75,000.00. Id.  An additional $10,000.00 has been allocated for Named Plaintiff enhancements of $2,000.00 a piece to each of the five Named Plaintiffs.  Id.  Given these allocations, the parties estimate that $1,620,000.00 will be available for distribution to Class Members ("Net Settlement Amount").

### ii.  Notice Provisions

If this Court grants preliminary approval to the settlement, notice will be sent to the settlement class by a Claims Administrator.  See Settlement Stip. § III.D. The proposed Notice is attached to the Settlement Stip. as Exhibit A.  Prior to mailing, the Settlement Administrator shall process names and addresses provided by Adecco and Class Counsel through the National Change of Address database. Id. § III.D.2.  Class Members shall have sixty (60) days to return a Claim Form.  Id. § III.F.  The proposed Claim Form is attached to the Settlement Stip. as Exhibit B. The notice and claim form will be translated into Spanish.  Id. § III.D.1.  During the notice period, the Claims Administrator will perform an address trace on mail that is returned undeliverable.  Id. § III.D.4.

Class Members will have the right to object to the settlement by filing objections with the Court and serving them on counsel.  Settlement Stip. § III.E.1.; Settlement Stip. Exh. A at 8.  Class Members who wish to opt out must file a Request for Exclusion form with the Settlement Administrator.  Settlement Stip. § III.E.2; Settlement Stip. Exh. A at 8-9.  The Request for Exclusion form is attached to the Settlement Stip. as Exhibit C.  The Request for Exclusion form will be translated into Spanish.  Settlement Stip. § III.D.1.  Objections and requests for

---

[2] The parties respectfully request that the Court consider Class Counsel's request for reimbursement of costs in conjunction with final approval.  Class Counsel is familiar with this Court's request for detailed itemization of expenses in Carter v. Anderson Merchandisers, EDCV08-00025 VAP (OPx), and will strive to meet the Court's expectations in that regard in this case.

exclusions must be filed/served within 45 days after the Settlement Administrator sends the notice.  Settlement Stip. § II.T.

### iii. Allocation Amongst Class Members[3]

Only Class Members who return Claim Forms ("Authorized Claimants") will be eligible to receive payment from the settlement.  Eighty-five percent (85%) of the Net Settlement Amount shall be allocated to the Security Line Subclass, while 15% of the Net Settlement Amount shall be allocated to the Meal and Rest Period Subclass.

Authorized Claimants in the Security Line Subclass shall receive payment based on the number of qualified shifts they worked at the Fontana Facility.  Discovery revealed that Defendants modified their procedures throughout the class period by, amongst other things, adding additional time clocks and relocating the metal detector.  Therefore, for purposes of determining the per-shift payment, shifts worked from the beginning of the Class Period through August 31, 2007 will be counted as full shifts, and shifts worked from September 1, 2007 through the end of the Class Period shall be counted as half shifts.  The per-shift payment will initially be determined by dividing the amount available for distribution to the Security Line Subclass by the number of shifts worked at the Fontana facility during the Class Period.  The per-shift payments for the Security Line Subclass are meant to cover both overtime claims at the Fontana facility and generalized meal and rest period claims at the Fontana Facility.

Twenty-five percent (25%) of the Net Settlement Amount allocated to the Meal and Rest Period Subclass shall be allocated to the general meal and rest period claims of Meal and Rest Period Subclass members who worked at the Celestica facility located at 1392 North Sarah Place, Ontario, California.  Authorized Claimants who report on their claim form that they were not provided with a first

---

[3] Unless another citation is provided, the allocation formulas in this section are outlined in detail at Settlement Stip. § III.F.4.

meal or a rest period to which they were entitled will receive cash compensation based on the number of shifts worked at this facility. The per-shift payment will initially be determined by dividing the money allocated to these claims by the total shifts worked by the Meal and Rest Period Subclass at 1392 North Sarah Place, Ontario, California during the Class Period.

The balance of the Net Settlement Amount allocated to the Meal and Rest Period Subclass will be distributed to Authorized Claimants who worked shifts exceeding 10 hours but whose time records show no second meal period deduction. The per-shift payment for Authorized Claimants who worked such shifts will initially be determined by dividing the balance of the Net Settlement Amount allocated to the Meal and Rest Period Subclass by the total number of qualifying shifts exceeding 10 hours worked by the Meal and Rest Period Subclass.

The parties recognize that not every Class Member will return claim forms. Due to the nature of this class, the parties anticipate that Claim Form return might be relatively low. Therefore, any portion of the Net Settlement Amount initially allocated to Class Members who do not return a claim form shall first be used to pay Defendants' FICA, federal and state unemployment, and other employer payroll tax obligations. Settlement Stip. § III.F.6. Any additional funds shall be reallocated to Authorized Claimants on a per-shift bases, pursuant to the formulas listed above. Id. This reallocation is capped at three times the initial payments allocated to Authorized Claimants. Id. Any funds remaining after Authorized Claimants receive their maximum three-times reallocation shall be donated to a charity mutually designated by the parties. Id.

**iv. Release**

In exchange for settlement payment, Class Members will release claims based on the factual allegations in Plaintiffs' Second Amended Complaint. The full release is outlined at Settlement Stip. § III.B. As is typical in these settlements,

1   Named Plaintiffs have agreed to a broader, general release of claims against
2   Defendants.  Settlement Stip. § III.B.4.

3   **III.**         **ARGUMENT**

4        Through this motion, the parties seek the Court's preliminary approval of
5   their settlement agreement.  Because the settlement is fair, reasonable, and
6   adequate, the Court should grant this joint motion.

7     **A. This Court's Prior Class Certification Order Satisfies The Requirements**
8          **Of Rule 23 At Settlement**

9        Under Rule 23(e), the Court has the responsibility to determine whether the
10  settlement class satisfies the requirements of Rule 23.  <u>Hanlon v. Chrysler Corp.</u>,
11  150 F.3d 1011, 1020 (9th Cir. 1998).  Here, the Court has benefitted from a fully-
12  contested class certification motion.  The Court issued a forty-four (44) page order
13  addressing the parties' class certification arguments.  <u>See</u> Class Certification Order,
14  Dkt. 94.  The Court certified the following classes:

15        <u>**Security Line Class:**</u>    All    current    and    former    non-exempt
16          employees of Defendants, paid by Defendant Adecco USA, Inc., who
17          passed through security screening before, during or after their work
18          shift, in Celestica's facility at 13473 Santa Ana Avenue, Fontana,
19          California, since June 14, 2003.

20        <u>**Meal and Rest Period Class:**</u>  All  current  and  former  non-exempt
21          employees of Defendants, paid by Adecco USA, Inc. who worked at
22          Celestica's facilities at 13473 Santa Ana Avenue, Fontana, California
23          and 1392 North Sarah Place, Ontario, California, and who, at any time
24          since June 14, 2003, were not provided a meal or rest period to which
25          they were entitled.

26  Dkt. 94 at 44.

27        The Court's examination of the class certification in that motion is sufficient
28  to support this class action settlement.   The parties request only a slight

1  modification to the class definitions previously certified, to ensure that the classes

2  do not continue in perpetuity and that future claims are not released:

3      **Security Line Class:** All current and former non-exempt

4      employees of Defendants, paid by Defendant Adecco USA, Inc., who

5      passed through security screening before, during or after their work

6      shift, in Celestica's facility at 13473 Santa Ana Avenue, Fontana,

7      California, from June 14, 2003 to [date of preliminary approval of

8      settlement].

9      **Meal and Rest Period Class:** All current and former non-exempt

10      employees of Defendants, paid by Adecco USA, Inc. who worked at

11      Celestica's facilities at 13473 Santa Ana Avenue, Fontana, California

12      and 1392 North Sarah Place, Ontario, California, and who, at any time

13      from June 14, 2003 to [date of preliminary approval of settlement],

14      were not provided a meal or rest period to which they were entitled.

15  **B. The Proposed Settlement Is Fair, Adequate, and Reasonable**

16  As the 9th Circuit has explained, citing the Fed.R.Civ.P. 23(e) threshold for

17  settlement approval, "[T]he universally applied standard is whether the settlement is

18  fundamentally fair, adequate and reasonable." <u>Officers for Justice v. Civil Service</u>

19  <u>Com'n of City and County of San Francisco</u>, 688 F.2d 615, 625 (9th Cir. 1982). At

20  the same time, "[t]he very essence of a settlement is compromise, a yielding of

21  absolutes and an abandoning of highest hopes." Id. at 624. The 9th Circuit's

22  standard of evaluation of the fairness, adequacy, and reasonableness of a settlement

23  requires this Court to balance several factors:

24      the strength of plaintiffs' case; the risk, expense, complexity, and

25      likely duration of further litigation; the risk of maintaining class action

26      status throughout the trial; the amount offered in settlement; the extent

27      of discovery completed, and the stage of the proceedings; the

28      experience and views of counsel; the presence of a governmental

1   participant; and the reaction of the class members to the proposed

2   settlement.

3   Officers for Justice, 688 F.2d at 625. See also Hanlon, 150 F.3d at 1026.

4   **i.  Arms-Length Negotiations**

5   As an initial matter, the Court should recognize that this settlement came

6   about as a result of arms-length negotiations between the parties.   The parties

7   engaged in two separate mediations with Mark S. Rudy, Esq., one of the most

8   respected mediators in Northern California.   Helland Decl. ¶¶ 3-5; Helland Decl.

9   Exh. 2.   The parties left the first mediation without coming to an agreement.

10   Helland Decl. ¶ 4.  The parties each discussed possible resolution with Mr. Rudy in

11   the months following the initial mediation.  Id.  Despite Mr. Rudy's efforts, the

12   parties could not reach a settlement following the first mediation.   Only after the

13   second mediation with Mr. Rudy, which took place after almost three years of

14   litigation and near the close of discovery, were the parties able to reach a

15   settlement.  Id. ¶ 5.

16   "The assistance of an experienced mediator in the settlement process

17   confirms that the settlement is non-collusive."  Satchell v. Federal Express Corp.,

18   2007 WL 1114010, at *4 (N.D.Cal. 2007).  See also Alexander Mfg., Inc. v. Illinois

19   Union Ins. Co., 666 F.Supp.2d 1185, 1202 (D.Or. 2009).   Given the parties'

20   extensive mediation efforts with a neutral of Mr. Rudy's caliber, and the three years

21   of contentious litigation in this matter, the Court should find that the settlement is

22   non-collusive and the result of arms-length negotiations.

23   **ii.  Strength Of Plaintiffs' Case**

24   There are many areas in which Plaintiffs' case is strong.  For example,

25   Plaintiffs have obtained partial summary judgment on one of the central issues of

26   the case – the application of the Morillion "control of the employer" doctrine to

27   Plaintiffs' pre-shift and post-shift time.  See Summary Judgment Order, Dkt. 168 at

28   19, 26.  Accordingly, the only remaining barrier to liability on Plaintiffs' overtime

claims is Defendants' <u>de minimis</u> defense.  Plaintiffs are confident they would have prevailed on the <u>de minimis</u> doctrine at trial.  Further, Plaintiffs believe they had a high likelihood of success on their claims for second meal periods.  Defendants records indicate work periods in excess of over ten hours with only one meal period taken. <u>See</u> Stip. of Settlement § III.F.4.

Plaintiffs did face challenges, however.  For example, Defendants' expert witness, Mr. Crandall, concluded that the vast majority of class members' uncompensated time did not exceed certain <u>de minimis</u> thresholds.  Helland Decl. ¶ 9.  While Plaintiffs dispute Mr. Crandall's methodology and application of the <u>de minimis</u> standard, his expert report presented a challenge for Plaintiffs at trial.  <u>Id.</u>  Further, Mr. Crandall estimated that overtime damages, if they existed at all, ranged from a low of $116,465 to a high of $641,341.  <u>Id.</u>  Therefore, even if Plaintiffs prevailed at trial, they risked an award of far fewer damages then they expected to recover.  Further, although Plaintiffs felt confident that they would recover damages for second meal period violations, those damages were also relatively low.  Dr. Bardwell, Plaintiffs' expert, calculated those damages at $252,768.  Helland Decl. ¶ 10.

Defendants have also indicated that they would likely appeal any judgment in Plaintiffs' favor on their overtime claims.  Therefore, although Plaintiffs won the <u>Morillion</u> battle in front of this Court, the war would likely have continued in the appellate courts.  Plaintiffs risked losing their entire case on an eventual appeal.

### iii. Risk, Expense, Complexity and Likely Duration of Further Litigation

This case was set for trial in August 2010.  As this Court is well aware, trial of a class action is a complex and risky proposition.  Although Plaintiffs have been successful in the major motions thus far in the case, trial always carries with it the risk of loss.  Further, as noted above, Defendants have indicated they would likely litigate this case through appeal if Plaintiffs prevailed at trial.  Thus, even a trial win in August would have resulted in further time consuming, expensive, and risky

11

litigation.  It could have been years before this case was resolved on appeal.  Given that the parties have litigated for almost three years already, and given the relative size of this class action, it is appropriate for this matter to be laid to rest now, without costly trial and appellate litigation.  Settling the case now provides Class Members with the benefit of definite recovery without further delay.

### iv. Amount Offered In Settlement

Defendants have agreed to pay a total of $2,500,000 to resolve this matter. The parties estimate that $1,620,000 will be available for distribution to Class Members.  This amount is an adequate sum to compensate Class Members for their alleged damages.

In his rebuttal report, Dr. Bardwell calculated damages using Mr. Crandall's methodology.  Helland Decl. ¶ 10.  Using that methodology, he determined that Class Members' overtime damages totaled $1,594,156.[4]  Id.  Of course, Defendants dispute Dr. Bardwell's methodology and conclusions.  Setting that dispute aside, however, the amount to be distributed to Class Members in this case ($1,620,000) exceeds Dr. Bardwell's rebuttal overtime damage estimate ($1,594,156).  Based on these numbers, the Court should find that the amount offered in settlement is sufficient.

Further, the allocation formula provides that Class Members can recover up to three times their original settlement allocation, depending on the number of claim forms returned.  Settlement Stip. § III.F.6.  Given the transient nature of this class, the parties believe a large number of Class Members will not return claim forms. Therefore, it is highly likely that participating Class Members will receive significantly more than their proportional share of the ~$1,620,000 available for distribution.  The increased secondary allocation is sufficient to compensate Class Members' potential meal period claims, as well as potential waiting time and wage

---

[4] Dr. Bardwell's damage calculation was higher in his initial report.  Dr. Bardwell's use of Mr. Crandall's methodology in his rebuttal report acknowledges the risks associated with "dueling experts" at trial.

12

statement penalties.  Given that "[t]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes," <u>Officers for Justice</u>, 688 F.2d. at 624, the Court should find that the amount offered in settlement is adequate.

### v.  Extent of Discovery Completed and Stage of the Proceedings

Courts review the extent of the discovery completed in a class action settlement to ensure that "the parties have sufficient information to make an informed decision about settlement."  <u>Linney v. Cellular Alaska P'ship</u>, 151 F.3d 1234, 1239 (9th Cir. 1998).  This case was near the end of discovery when it settled.  As outlined above, the parties have conducted nineteen depositions and exchanged tens of thousands of documents.  The parties also retained expert witnesses.  Given the late stage of the proceedings at the time of settlement, the parties were in great position to make an informed decision about settlement.

### vi. Experience and Views of Counsel

In approving Nichols Kaster as Class Counsel, this Court has previously recognized the firm's extensive experience in complex wage and hour class litigation.  <u>See</u> Class Certification Order, Dkt. 94 at 33-34.  Defendants are likewise represented by experienced counsel from large, nationwide law firms.  Counsel for all parties agree that the settlement is in the best interests of their clients.  <u>See</u> Stip. of Settlement §§ I.F-I.H.  Counsel's opinion is afforded considerable weight.  <u>See, e.g.</u>, <u>Alberto v. GMRI, Inc.</u>, 2008 WL 4891201, at *10 (E.D.Cal. 2008); <u>Hughes v. Microsoft Corp.</u>, 2001 WL 34089697, at *7 (W.D.Wash. 2001).  Accordingly, this factor weighs in favor of the reasonableness of the settlement.

### vii.    Reaction of Class Members

The Named Plaintiffs in this case have all signed the Settlement Agreement and thus endorsed the settlement.  <u>See</u> Settlement Stip.  As to the rest of the Class, the parties respectfully request that the Court review this factor at Final Approval, after Class Members have had the opportunity to opt-out or object.

13

### C. The Proposed Named Plaintiff Enhancements Are Reasonable

The Settlement Stipulation provides for enhancement payments to Named Plaintiffs in the amount of $2,000 each.  Settlement Stip. § III.H.  The Court should approve these enhancements as reasonable and appropriate.

The criteria courts may consider in determining whether to make an incentive award include:

> 1) the risk to the class representative in commencing suit, both financially and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

Van Vranken v. Atlantic Richfield Co., 901 F.Supp. 294, 299 (N.D.Cal. 1995).  In analyzing these criteria, the Court must conduct an individualized analysis in order to detect "excessive payments to named class members" that may indicate "the agreement was reached through fraud or collusion."  Staton v. Boeing Corp., 327 F.3d 938, 977 (9th Cir. 2003); Alberto, 252 F.R.D. at 669; Hopson v. Hanesbrands, Inc., 2009 WL 928133, at *10 (N.D.Cal. 2009).

As an initial matter, as noted above, this settlement agreement was only reached after two mediation sessions with Mark Rudy.  There has been no fraud or collusion between the parties in ending three years of litigation through this settlement.  Further, Named Plaintiffs Jose Cervantez, Rusty Reyes, George Santos, Maria Nguyen, and Marina Flores submit declarations supporting the proposed enhancements.

The Named Plaintiffs faced risks in filing this suit.  In difficult economic times in Southern California, Plaintiffs missed work in order to attend their depositions and otherwise meet with Class Counsel.  See Cervantez Decl. ¶ 9; Santos Decl. ¶ 9; Flores Decl. ¶ 9.  George Santos lost his job, in part because he

1  missed work to attend his deposition.  Santos Decl. ¶ 9.  Further, by serving as a

2  Named Plaintiff, these individuals risked that future employers may become aware

3  of their involvement and hold that against them.  See Cervantez Decl. ¶¶  9-10;

4  Reyes Decl. ¶ 10; Santos Decl. ¶ 10; Nguyen Decl. ¶ 9; Flores Decl. ¶ 9.  Although

5  lawyers and judges understand that retaliation is against the law, that protection is

6  often little comfort to low wage workers who depend on their weekly paycheck to

7  survive.  In Class Counsel's experience, the fear of retaliation is a very real

8  deterrent to individuals serving as Named Plaintiffs.  Here, Maria Nguyen believes

9  employers found out about her involvement in the case, and that her involvement

10  influenced employers' decisions not to hire her.  Nguyen Decl. ¶ 9. Rusty Reyes no

11  longer uses Adecco as a reference because of his involvement in this case.  Reyes

12  Decl. ¶ 10.  These fears are part of the reason enhancements are appropriate.

13       Further, the Named Plaintiffs invested significant time in the case.  The

14  Named Plaintiffs were involved in this litigation for almost three years. Cervantez

15  Decl. ¶ 4; Reyes Decl. ¶ 4; Santos Decl. ¶ 4; Nguyen Decl. ¶ 4; Flores Decl. ¶ 4.

16  Over the course of those three years they appeared for their depositions, answered

17  discovery requests, and kept in communication with Class Counsel regarding the

18  status of the case.  Cervantez Decl. ¶¶  5-8; Reyes Decl. ¶¶  5-9; Santos Decl. ¶¶  5-

19  8; Nguyen Decl. ¶¶ 5-8; Flores Decl. ¶¶  5-8.  Maria Nguyen's husband passed

20  away during the pendency of this case.  Nguyen Decl. ¶ 6.  The Named Plaintiffs'

21  resolve in fulfilling their obligations to the Class, throughout the duration of this

22  litigation, should be recognized.  The Named Plaintiffs estimate that they spent

23  between fifteen and thirty hours working on this case.  Cervantez Decl. ¶ 12; Reyes

24  Decl. ¶ 12; Santos Decl. ¶ 12; Nguyen Decl. ¶ 11; Flores Decl. ¶ 11.   Their

25  devotion of time to the case should be recognized.

26       Lastly, each of the Named Plaintiffs stands to receive a relatively small

27  amount of payment under the settlement formula.   According to Defendants'

28  records, Jose Cervantez worked 31 weeks as a class member, Rusty Reyes worked

58 weeks as a class member, most of which will only qualify for the Meal Period Subclass, George Santos worked 22 weeks as a class member, Maria Nguyen worked 19 weeks as a class member, and Marina Flores worked 15 weeks as a class member.  Helland Decl.  ¶ 11.   Named Plaintiff enhancements in the amount of $2,000 each are appropriate here, given the Named Plaintiffs' service to the class and the otherwise small amounts to which they will be entitled.

**D. The Proposed Notice Procedures Are Sufficient Under Fed.R.Civ.P. 23(e)**

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal."   Fed.R.Civ.P. 23(e)(1). Notices should contain "adequate information, presented in a neutral manner, to apprise class members of the essential terms and conditions of the settlement." Rodriguez v. West Publishing Corp., 563 F.3d 948, 962 (9th Cir. 2009).

The proposed notice informs class members of 1) the nature of the lawsuit; 2) a summary of terms of the settlement agreement, including the settlement amount and the method of allocating the settlement amount; 3) the binding effect of the settlement and the class release; 4) how to participate in the settlement; 5) information about the exclusion procedure; 6) information regarding the final settlement hearing and how to object to the settlement; 7) how to obtain additional information regarding settlement; and 8) attorneys' fees and costs.  See Settlement Stip. Exh. A.   The notice, claim form, and request for exclusion form will be translated into Spanish.  The Court should find that the Proposed Notice adequately informs Class Members about the settlement.

Further, the proposed notice procedures are adequate.  After using Class Counsel's records and the National Change of Address database to update addresses, the Settlement Administrator will mail the notice, claim form, and request for exclusion form by first class U.S. Mail.  Settlement Stip. §§ III.D.2.-D.3.  The Settlement Administrator will perform and address search on returned

16

mail and attempt a second mailing to one new address. Id. § III.D.4. These procedures will sufficiently advise Class Members of their rights in the settlement.

**IV.   CONCLUSION**

For the reasons outlined herein, the parties request that the Court grant their joint motion for preliminary approval in its entirety.

Dated: <u>May 24,</u> 2010                              **NICHOLS KASTER, LLP**

By: <u>s/Matthew C. Helland</u>

Matthew C. Helland
ATTORNEYS FOR PLAINTIFFS AND
THE CLASS

Dated: <u>May 24</u>, 2010                              **BRYAN CAVE LLP**

By: <u>s/Julie E. Patterson</u>
    Julie E. Patterson
Counsel for Defendant Adecco USA,
Inc.

Dated: <u>May 24</u>, 2010                              **FOX ROTHSCHILD LLP**

By: <u>s/Alexander Hernaez</u>
    Alexander Hernaez
Counsel for Defendant Celestica
Corporation

17