O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE CERVANTEZ, et al.,<br><br>　　　Plaintiff,<br><br>　v.<br><br>CELESTICA CORPORATION,<br>et al.,<br><br>　　　Defendants. | Case No. EDCV 07-729-VAP (OPx)<br><br>**[Motion filed on May 24, 2010]**<br><br>**ORDER PRELIMINARILY APPROVING CLASS SETTLEMENT** |

## I. BACKGROUND

Defendant Celestica Corporation, a manufacturer and repairer of electronic and computer parts, operated facilities at 13473 Santa Ana Avenue, Fontana, California (the "Fontana Facility") and 1392 North Sarah Place, Ontario, California (the "Ontario Facility").  The Fontana Facility is a shipping and receiving hub.

Defendant Adecco USA, Inc. ("Adecco") is a temporary staffing agency that provided employees at Celestica's Fontana Facility.

**A.   Plaintiffs' Allegations**

Plaintiffs Jose Cervantez, Rusty Reyes, George Santos, Maria Nguyen, and Marina Flores ("Plaintiffs"), employees of Celestica and Adecco ("Defendants"), and other similarly situated employees, worked for Defendants either at the Fontana or Ontario Facilities.  Defendants required Plaintiffs and other similarly situated employees to pass through security checkpoints at the beginning and end of their shifts, but did not pay them for their time spent waiting in line to pass through security.  Defendants further required Plaintiffs and similarly situated employees to work shifts longer than eight hours, yet failed to pay them for their overtime hours.  Defendants failed to provide Plaintiffs and similarly situated employees with a thirty minute, uninterrupted meal period, and failed to provide a second thirty minute meal period for employees who worked in excess of ten hours.  Finally, Defendants did not provide Plaintiffs and other similarly situated employees with two paid ten minute rest breaks each day, and did not pay an additional hour of pay to compensate for the denial of meal and rest breaks.

**B.   Procedural History**

Plaintiffs filed their Complaint on June 15, 2007. Plaintiffs filed a First Amended Complaint on July 25, 2007, and a Second Amended Complaint on March 4, 2008.

In the Second Amended Complaint, Plaintiffs assert claims for (1) failure to pay overtime compensation in violation of California law; (2) waiting time penalties; (3) failure to provide accurate itemized wage statements; (4) failure to provide rest breaks and meal periods; and (5) violations of California Business and Professions Code section 17200.

On July 30, 2008, the Court granted Plaintiffs' motion for class certification, and certified two classes as follows:

**Security Line Class:** All current and former non-exempt employees of Defendants, paid by Defendant Adecco USA, Inc., who passed through security screening before, during or after their work shift, in Celestica's facility at 13473 Santa Ana Avenue, Fontana, California, since June 14, 2003.

**Meal and Rest Period Class:** All current and former non-exempt employees of Defendants, paid by Adecco USA, Inc. who worked at Celestica's facilities at 13473 Santa Ana Avenue, Fontana, California and 1392 North Sarah Place, Ontario, California, and who, at any time since

1  June 14, 2003 were not provided a meal or rest period to
2  which they were entitled.[1]
3
4     On May 6, 2009, the Court granted in part and denied
5  in part Plaintiffs' motion for summary judgment, finding
6  that Plaintiffs were entitled to summary adjudication as
7  to whether or not Celestica was a joint employer of
8  Plaintiffs.
9
10    On May 24, 2010, the parties jointly filed this
11 Motion for Preliminary Approval of Settlement Agreement
12 ("Motion").
13
## II. LEGAL STANDARD
15    Rule 23(e) states: "[t]he claims, issues, or defenses
16 of a certified class may be settled, voluntarily
17 dismissed, or compromised only with the court's
18 approval."  The court must hold a hearing and find that
19 the settlement "is fair, reasonable, and adequate."  Fed.
20 R. Civ. P. 23(e)(2).  Review of a proposed settlement
21 generally proceeds in two stages, a hearing on
22 preliminary approval followed by a final fairness

---

[1] The parties here propose to modify slightly the definition of each class to make the end of the class period coincide with the date this Order issues.  (Mot. at 8:7-9:14.)  The Court approves of this modification, and hereby incorporates it into its definitions of the Security Line Class and the Meal and Rest Period Class.

4

hearing. See Federal Judicial Center, Manual for Complex Litigation, § 21.632 (4th ed. 2004).

At the preliminary approval stage, a court determines whether a proposed settlement is "within the range of possible approval" and whether notice should be sent to class members. In re Corrugated Container Antitrust Litig., 643 F.2d 195, 205 (5th Cir. 1981); see also Gautreaux v. Pierce, 690 F.2d 616, 621 n. 3 (7th Cir. 1982) (stating that the purpose of a preliminary approval hearing is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing."); Manual for Complex Litigation § 21.632.

### III. DISCUSSION
**A.  Fairness, Reasonableness, and Adequacy of the Proposed Settlement**

In determining whether or not the settlement is fair, reasonable, and adequate, courts balance several factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a

governmental participant[2]; (8) and the reaction of the class members to the proposed settlement. <u>Class Plaintiffs v. City of Seattle</u>, 955 F.2d 1268, 1291 (9th Cir. 1992).

Here, the proposed settlement calls for a total settlement consideration of $2,500,000, from which the parties propose to deduct the following: (1) an amount not to exceed 25% for attorney's fees; (2) an amount not to exceed $170,000 for Plaintiffs' litigation expenses; (3) an amount not to exceed $10,000 for the Plaintiffs; and (4) claims administration costs in an amount estimated at $75,000. (Settlement Agreement ¶ III.A.1.) After these deductions, the estimated remaining settlement amount ("Net Settlement Amount") will be approximately $1,620,000.

The Settlement Agreement proposes to divide the Net Settlement Amount as follows: 85% of the Net Settlement Amount shall be allocated to the Security Line Class, and 15% shall be allocated to the Meal and Rest Period Class. (Settlement Agreement ¶ III.F.4.)

Within the Security Line Class, class members will receive compensation based on the number of qualified

---

[2] As this factor does not apply to this case, the Court does not address it.

shifts worked. Per-shift payments will be determined by dividing the Net Settlement Amount allocated to the Security Line Class by the total shifts worked by Security Line Class. Shifts worked from the beginning of the class period through August 31, 2007 will be counted as full shifts, while those worked after August 31, 2007 through the end of the class period will be counted as half shifts.[3] These payments are intended to compensate members of the Security Line Class both for overtime claims and "generalized meal and rest period claims." (Mot. at 6:19-21.)

Within the Meal and Rest Period Class, 25% of the allocated Net Settlement Amount will be allocated to class members who worked at the Ontario Facility and who were not provided a first meal or rest period. (Settlement Agreement ¶ III.F.4.) Such class members will receive per-shift payments determined by dividing the money allocated to these class members by the number of total shifts worked by the Meal and Rest Period Class at the Ontario Facility during the class period. (Id.) The remainder of the Net Settlement Amount allocated to the Meal and Rest Period Class will be distributed to class members who worked shifts exceeding ten hours, but whose time records show no second meal period deduction.

---

[3] The parties state that this varying treatment is due to Defendants' modification of their procedures during the class period. (Mot. at 6:9-13.)

7

(Id.)  The per-shift payments to these class members will be determined by dividing the amount of the Net Settlement Amount allocated to the Meal and Rest Period Class by the total number of shifts worked by the class which exceeded ten hours and for which there is no record of a second meal period.  (Id.)

In the event that any portion of the Net Settlement Amount remains unclaimed, the unclaimed portion shall be distributed to class members who have submitted valid claim forms on a pro rata basis, subject to a maximum of three times the amount to which they were entitled as described above.  Any remaining portion of the Net Settlement Agreement remaining after this further pro rata distribution will be donated to a charity mutually agreed-upon by the parties, subject to Court approval.  (Id. at III.F.6.)

As set forth below, all but one of the Class Plaintiffs either favors the proposed settlement or is neutral.

### 1. Strength of Plaintiff's Case

In support of the strength of Plaintiffs' case, the parties note that Plaintiffs have already obtained summary adjudication in its favor on the question of whether Celestica is a joint employer, (see Docket No.

168 at 34:22-24), and that "the only remaining barrier to liability on Plaintiffs' overtime claims is Defendants' <u>de minimis</u> defense." (Mot. at 10:28-11:1.) Plaintiffs' ability to prevail is still uncertain, however, as Defendants contend that "the vast majority of the class members' uncompensated time did not exceed certain <u>de minimis</u> thresholds." (<u>Id.</u> at 11:7-8.) For these reasons, the Court finds this factor weighs in favor of the proposed settlement.

**2.  Risk, Expense, Complexity, and Likely Duration of Further Litigation**

The parties discuss several risks Plaintiffs would face were they to litigate this action through trial.

First, Plaintiffs face the risk that they will not succeed on the merits of their claims. As the parties note, trials of class actions are inherently risky and unpredictable propositions. Furthermore, as discussed above, Defendants believe their <u>de minimis</u> defense is meritorious. It thus is possible that Plaintiffs will not succeed on the merits of their claims.

Second, even assuming the Plaintiffs succeed on the merits of their claims, they face the risk that the jury will disagree with them as to the amount of damages. Defendants' expert witness estimates Plaintiffs' overtime

damages, if any, to be between $116,465 and $641,341. (Id. at 11:11-12.)  Plaintiffs' own expert estimated their second meal period damages to be $252,768.  (Id. at 11:15-16.)  Accordingly, even if Plaintiffs eventually prevail on the merits of their claims they risk not only recovering less than they sought, but less than what is provided for in the proposed settlement.

Furthermore, to litigate this action to its conclusion likely would be expensive, complex, and time consuming.  Trial of a class action is a lengthy, expensive proposition.  Defendants have indicated their intent to pursue an appeal of this case if they were to lose at trial, resolution of which would add great expense and delay to the final resolution of this action.

For the foregoing reasons, this factor weighs heavily in favor of the proposed settlement.

    **3.  Risk of Maintaining Class Action Status throughout the Trial**

The parties do not address this factor in their Motion.  The Court has already certified the Security Line Class and the Meal and Rest Period Class, and this action is scheduled for trial in August 2010. Accordingly, the risk that Plaintiffs will not be able to

maintain class action status through trial is low.  This factor slightly weighs against the proposed settlement.

**4.  Amount Offered in Settlement**

The amount offered in settlement is $2,500,000. (Settlement Agreement ¶ III.A.2.)  In exchange for the settlement, Plaintiffs agree to release all of their claims against Defendants, and the class members agree to release those claims related to the claims in this action.  (Id. ¶ III.B.)  The amount offered in settlement supports preliminary approval.  Considering the present value of the settlement amount, the probability of lengthy litigation in the absence of a settlement, the risk that Plaintiffs and the class members would not have been able to succeed at trial, and the risk that a jury could award damages less than $2,500,000, the settlement amount is within the range of reasonableness. Accordingly, this factor weighs in favor of preliminary approval.

**5.  Extent of Discovery Completed, and Stage of Proceedings**

As detailed by the parties, this case is near trial, and the parties have conducted extensive discovery.  The parties collectively have taken nineteen depositions. Plaintiffs have taken the Rule 30(b)(6) depositions of both Celestica and Adecco and have deposed seven

1  additional defense witnesses. (Decl. of Matthew C.
2  Helland ("Helland Decl.") ¶ 6.) Celestica has responded
3  to two sets of interrogatories propounded by Plaintiffs,
4  and Adecco has responded to three. (Id.) Plaintiffs
5  have also propounded three sets of requests for admission
6  on Adecco and one set on Celestica. (Id.) In response
7  to document requests, Celestica and Adecco have produced
8  almost 50,000 pages of documents, as well as voluminous
9  electronic data. (Id.) Plaintiffs have conducted two
10 site inspections of the Fontana Facility and one site
11 inspection of the Ontario Facility. (Id.) Plaintiffs
12 have subpoenaed records from Celestica's third party
13 security provider, (id. ¶ 7), and have interviewed third
14 party witnesses. (Id.) Finally, Plaintiffs have
15 obtained an expert witness who has prepared an expert
16 report and a rebuttal expert report. (Id. ¶ 8.)

18      This case is scheduled for trial in August 2010.
19 The Court has already granted Plaintiffs' motion for
20 class certification, and has granted in part and denied
21 in part Plaintiffs' motion for summary judgment.

23      The extensive discovery taken and the parties'
24 thorough litigation of the various issues in this case
25 weighs in favor of the proposed settlement.

### 6. Experience and Views of Counsel

In its July 30, 2008 Order certifying the classes, the Court recognized the experience, knowledge, and resources of Nichols Kaster, LLP, class counsel here. Both Plaintiffs' counsel and Defendants' counsel agree that, in light of the risks presented by this action, the Settlement Agreement represents a fair and reasonable resolution of this action. (Settlement Agreement ¶¶ I.J.15.) This factor weighs in favor of the reasonableness of the Settlement Agreement.

### 7. The Reaction of the Class Members to the Proposed Settlement

The parties offer no evidence concerning the reaction of the class members, instead requesting that the Court review this factor in considering whether the proposed settlement should receive final approval. At this stage, this factor is neutral as to the proposed settlement.

### B. Attorneys' Fees and Incentive Payment for Named Plaintiff

The Motion and Settlement Agreement indicate Plaintiffs will seek allocation of settlement funds for attorneys' fees, litigation costs, and for incentive awards payment for Plaintiffs; the Court must also

evaluate the fairness and reasonableness of these allocations.

### 1. Attorneys' Fees

Plaintiffs assert claims under California state law; their application for attorney's fees thus will be governed by California law. See <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1047 (9th Cir. 2002). California recognizes the common fund doctrine for the award of attorneys' fees to prevailing plaintiffs whose efforts result in creation of a fund benefitting others. <u>Serrano v. Priest</u>, 20 Cal. 3d 25, 35 (1977). Under both California and Ninth Circuit precedent, a court may exercise discretion to award attorneys' fees from a common fund by applying either the lodestar method[4] or the percentage-of-the-fund method.[5] <u>Wershba v. Apple Computer, Inc.</u>, 91 Cal. App. 4th 224, 254 (2001); <u>Fischel v. Equitable Life Assurance Soc'y of U.S.</u>, 307 F.3d 997, 1006 (9th Cir. 2002), citing <u>Vizcaino</u>, 290 F.3d at 1047. "Irrespective of the chosen method, 'the district court should be guided by the fundamental principle that fee

---

[4] Under the lodestar method, the court calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hour rate and then enhancing that figure, if necessary to account for the risks associated with representation. <u>Paul, Johnson, Alston & Hunt v. Graulty</u>, 886 F.2d 268, 272 (9th Cir. 1989).

[5] Under the percentage-of-the-fund method, the court calculates the fee award by designating a percentage of the total common fund. <u>Six Mexican Workers v. Ariz. Citrus Growers</u>, 904 F.2d 1301, 1311 (9th Cir. 1990).

14

awards out of common funds be 'reasonable under the circumstances.'" <u>Alberto v. GMRI. Inc.</u>, 252 F.R.D. 652, 667 (E.D. Cal. 2008) (citations omitted).

The parties request the Court consider attorney's fees in conjunction with final approval, and thus do not address the method they use to calculate attorney's fees. (Mot. at 4 n.1.) Plaintiffs' counsel intends to apply for payment of $625,000 in attorney's fees, or 25% of the total proposed settlement amount. (Mot. at 4:22-25.) For the purposes of preliminary approval, this amount appears reasonable; under the common fund method, the applicable benchmark is 25%, and any adjustment to this benchmark must clearly be supported by unusual circumstances. <u>See</u> <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); <u>Graulty</u>, 886 F.2d at 272 (the 25% benchmark can be adjusted upward or downward "to account for any unusual circumstances[,]" but the justification for adjustment must be clear).

**2.   Incentive Payment for Plaintiff**

The Motion indicates Plaintiffs will seek $2,000 each as an incentive award, or $10,000 total, in addition to any recovery to which they may be entitled under the Settlement Agreement. (<u>See</u> Settlement Agreement ¶

III.A.1.)  "The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation."  Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Plaintiffs submit declarations detailing the amount of time they have spent on this case, including participating in depositions; meeting with class counsel on several occasions, both in person and via telephone; and preparing discovery responses.  (Decl. of Jose Cervantez ("Cervantez Decl.") ¶¶ 5-8; Decl. of Rusty Reyes ("Reyes Decl.") ¶¶ 6-9; Decl. of George Santos ("Santos Decl.") ¶¶ 5-8; Decl. of Maria Nguyen ("Nguyen Decl.") ¶¶ 5-8; Decl. of Marina Flores ("Flores Decl.") ¶¶ 5-8.)  Plaintiffs estimate their total hours spent participating in the litigation as ranging from fifteen to thirty hours apiece.  (Cervantez Decl. ¶ 12; Reyes Decl. ¶ 12; Santos Decl. ¶ 12; Nguyen Decl. ¶ 11; Flores Decl. ¶ 11.)  Plaintiffs also state that they bore individual risks in their capacity as class

representatives, including the risk that future employers would view their participation in this litigation with disfavor. (Cervantez Decl. ¶ 10; Reyes Decl. ¶ 10; Santos Decl. ¶ 9; Nguyen Decl. ¶ 9; Flores Decl. ¶ 9.)

An award of $2,000 is reasonable, considering the time Plaintiffs expended, the applicable risks, and the awards other Class Members will receive. The parties have not stated how much the parties anticipate class members will receive. An award of $2,000 would constitute 0.40% of the gross settlement, or 0.62% of the estimated Net Settlement Amount. This roughly corresponds to incentive awards approved by other courts, including the Ninth Circuit. <u>See</u>, <u>e.g.</u>, <u>In re Mego Fin. Corp. Sec. Litig.</u>, 213 F.3d 454, 457, 463 (9th Cir. 2000) (approving incentive award of $5,000 to two plaintiff representatives of 5,400 potential class members in $1.75 million settlement, but constituting only 0.56% of the settlement); <u>In re SmithKline Beckman Corp. Sec. Litig.</u>, 751 F. Supp. 525, 535 (E.D. Pa. 1990) (approving incentive payments of $5,000 for one named representative of each of nine plaintiff classes involving more than 22,000 claimants and a settlement of $22 million, constituting 0.18% of the settlement amount).

**C.   Notice and Administrative Procedures**

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement.  Fed. R. Civ. P. 23(e)(1).  Plaintiff must provide notice that is "timely, accurate, and informative."  See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 172 (1989).  Likewise, claims forms must be informative and accurate.  Id. at 172; Churchill Village, LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alter those with adverse viewpoints to investigate and to come forward and be heard.").  The proposed form of class notice submitted as Exhibit A to the Settlement Agreement, as well as the proposed proof of claim and request for exclusion forms attached to the Settlement Agreement as Exhibits B and C, respectively, have been agreed upon by all counsel and are adequate, as are the notice, objection, exclusion, and claims procedures set forth in the Settlement Agreement. (Settlement Agreement ¶¶ III.D-F.)

**IV.   CONCLUSION**

For the foregoing reasons, the Court:

(1) grants preliminary approval of the parties' Settlement;

18

1       (2) directs dissemination of the class notice and
2           claim form to the class; and

4       (3) sets hearing date for final approval hearing and
5           related dates as set forth below:

| Event | Agreement | Date |
|---|---|---|
| Adecco shall provide claims administrator and Plaintiffs' counsel with identifying, contact, and shift information for class members. | Within ten (10) business days after the date of this Order. | July 20, 2010 |
| Plaintiffs' counsel shall provide the claims administrator with any updated address information for class members. | Within five (5) business days of receipt of class information from Adecco. | July 27, 2010 |
| Claims administrator shall mail the notice in the form of Exhibit A to the Settlement Agreement to all identified class members by first-class, regular U.S. Mail, attaching proof of claim and request for exclusion forms in the form of Exhibits B and C to the Settlement Agreement, respectively. | Within fourteen (14) days of receipt of class information from Adecco. | August 10, 2010 |
| Request for exclusion forms must be postmarked. | Forty-five (45) days from the date the claims administrator mails the notice. | September 24, 2010 |

19

| | | |
|---|---|---|
| Request for exclusion forms must actually be received by the claims administrator. | Fifty-five (55) days from the date the claims administrator mails the notice. | October 4, 2010 |
| Claims administrator shall provide the parties with a list of all class members who have properly requested exclusion from the settlement class. | No later than 30 days before the final settlement approval hearing. | October 22, 2010 |
| Proof of claim forms must be postmarked. | Sixty (60) days from the date the claims administrator mails the notice. | October 9, 2010 |
| Proof of claim forms must actually be received by the claims administrator. | Seventy (70) days from the date the claims administrator mails the notice. | October 19, 2010 |
| Final settlement approval hearing. | | November 22, 2010 at 2:30 p.m. |
| Settlement payments shall be made to each authorized claimant. | Within fifteen (15) days of the date judgment approving the proposed settlement becomes final. | To be determined |

Dated: July 6, 2010

*Virginia A. Phillips*
VIRGINIA A. PHILLIPS
United States District Judge

20